LOUIS HUTTER v. STATE OF NEBRASKA.

FILED DECEMBER 15, 1919.    No. 21014.

Intoxicating Liquors: EVIDENCE. Evidence reviewed in the opinion *held* insufficient to sustain a conviction under section 11, ch. 187, Laws 1917.

ERROR to the district court for Sarpy county: JAMES T. BEGLEY, JUDGE. *Reversed.*

*A. E. Langdon* and *Murphy & Winters,* for plaintiff in error.

*Clarence A. Davis, Attorney General, George W. Ayres, J. B. Barnes* and *Ralph P. Wilson, contra.*

MORRISSEY, C. J.

Defendant was convicted in the district court for Sarpy county of having and keeping intoxicating liquors in a barn or shed the same not being his private dwelling-house, in violation of section 11, ch. 187, Laws 1917.

The testimony shows that this shed was 18 or 20 feet wide, 60 feet long, and opened on an alley at the rear of defendant's place of residence. On the evening of September 15, 1918, the building was destroyed by fire. The members of the local fire department, together with other citizens, went to the premises to assist in fighting the fire. The building was used as a general storeroom and garage. Defendant had been engaged in the meat business, and also in the sale of macaroni. A miscellaneous assortment of goods and chattels, including an automobile, a considerable quantity of macaroni, macaroni sacks, furniture, and stock food or medicine, were kept in the building. Practically all of this stuff was destroyed by the fire. According to the testimony of the witnesses for the state, while they were going through the mass of debris with a view of extinguishing the fire, they came upon a box, or case, containing numerous bottles filled with liquid. There is some discrepancy as to the number of bottles; one witness places the number as low as 6, while others estimate the number as high as 24. All agree, however, that they were of uniform size and shape, and that they were placed in regular order in the case, with cardboard between the bottles. The fire appears to have burned away the greater part of the case

and to have heated the bottles to such a degree that, when one of the witnesses undertook to pick one up by the neck, the bottle broke. One witness testifies that he poured some of the liquid into his hand, and that it had the odor of whiskey. The witnesses who stood around while he was doing this corroborate his testimony. One of the parties, with an iron bar, broke every bottle in the case, permitting the liquid to flow out upon the ground. The witnesses for the state testify that they saw these bottles broken, and that the contents had the odor of whiskey. Defendant was not present, and is in no way responsible for the destruction of the bottles. The evidence is not clear as to whether the bottles bore labels. One witness says they did, but, if so, the labels were not read, and neither bottle nor label was offered in evidence.

The cross-examination of the state's witnesses shows that they could not tell, with any degree of certainty, the difference between the odor of whiskey, alcohol, "anti-freeze," and kindred liquids. Defendant testified that he had quite a quantity of "anti-freeze" liquid in the building, which was intended for use in automobile radiators, and we think it may be fairly said from the record that the odor of this liquid might be mistaken for that of whiskey, especially when smelled in connection with the mass of debris that was then on fire. It is not disputed that defendant was a man of good-standing in the community. The presence of the "anti-freeze" liquid, in the building, the improbability of a man storing whiskey where it would be within reach of every passer-by, together with the good character of defendant, and the absence of even a suggestion in the record that he either used or trafficked in intoxicants, may reasonably raise a doubt as to his guilt.

In addition to this, the record shows that defendant's son, who was then in the army, had left some goods in the building, and the representative of a packing-house also used the building as a storeroom. Defendant denied

that he had any liquor, or that he had any knowledge of any liquor in the shed. The witnesses for the prosecution who found this case of bottles might easily have preserved them, or at least one of them. They might have read the labels, if there were labels. The contents of the bottles was the best evidence of what they contained and ought to have been preserved in place of being poured into the debris and a jury asked to convict upon mere conjecture.

The evidence is insufficient to sustain the verdict, and the judgment is

REVERSED.

SEDGWICK and DEAN, JJ., not sitting.