CLARK, C. J., dissenting.
The defendant was indicted under a bill which in its first count charged him with the possession of intoxicating liquors for the purpose of selling the same. Its second count was as follows: "Did receive said liquor other than by common carrier, contrary to the form of the statute in such case made and provided, and against the peace and dignity of the State." He was convicted upon the second count, and from the judgment upon such conviction appealed.
The evidence upon which he was convicted was as follows:
Frank Irby testified: "That he was policeman of the town of Monroe; that he searched the premises of the defendant on 6 November, 1920, in the town of Monroe, under a search warrant; defendant was present and said there was no liquor in his house; found a fruit jar containing some liquor in a closet; defendant said he had a small quantity for his sick baby; found another fruit jar containing small quantity in the same place; found a bottle of liquor under the meal or flour box, and found a jar full in another room on a shelf in some quilts, the house occupied by defendant and his family; found several other vessels that smelt of liquor."
J. W. Spoon, chief of police of Monroe, testified to the same effect.
At the conclusion of the State's evidence, defendant moved for judgment as of nonsuit on count in bill charging unlawful receipt of liquor. Motion was overruled, and defendant excepted.
He then offered the evidence of several witnesses as to his good character. At the conclusion of this evidence he did not renew his motion to nonsuit.
His Honor charged the jury on the second count as follows: "It is provided by law in this State that it shall be unlawful for any person, firm, or corporation, at any one time, or in any one package, to receive in the State of North Carolina for his or her own use, or for any other purpose, or for any other person, firm, or corporation to have in their possession for any other purpose any spirituous, vinous, or malt liquors in greater quantity than one quart, or any malt liquors in greater quantities than five gallons. That the State has to satisfy you beyond a reasonable doubt that the defendant had more than a quart of liquor in his possession.
"If the State has satisfied you beyond a reasonable doubt under the definition which I have given you already of reasonable doubt, and the *Page 568 
testimony that it has offered, that the defendant had the liquor in his possession, although it was in different parts of the building, and he inhabited the building it was in, and that the liquor was there belonging to him, the burden of proof being upon the State and the presumption of innocence in favor of the defendant, more than a quart of liquor, then the State has met, as the court charges you, the requirements of law, and made out a prima facie case, and then it would devolve the laboring oar upon the defendant to satisfy you, not beyond a reasonable doubt, but to satisfy you that he did not receive the portion of whiskey he had then, slightly over three quarts, that he did not receive this liquor within fifteen consecutive days. That he did not receive it at times when fifteen consecutive days had intervened between the receipt of the first, second, or third quart, that he received it in that way."
(To the foregoing part of his Honor's charge the defendant excepts.)
"If you believe the evidence of the State, have no doubt about it on the second count of the indictment, the presumption being in the defendant's favor and the burden on the State, nothing else appearing, the court instructs you to return a verdict of guilty of receiving whiskey unlawfully, as charged in the bill of indictment."
(To the foregoing part of his Honor's charge defendant excepts.)
It cannot be seen from the indictment or the charge of the court whether the defendant is charged with violating sec. 3385 of Consolidated Statutes, which makes it unlawful to receive at one time and in one package more than one quart of spirituous or vinous liquors or intoxicating bitters, or more than five gallons of malt liquors, or under sec. 3386, which prohibits any person, firm, or corporation from receiving during the space of fifteen consecutive days, whether at one time or in one package or not, "any spirituous or vinous liquors or intoxicating bitters in a quantity or quantities totaling more than one quart, or any malt liquors in a quantity greater than five gallons," but under either the instructions to the jury are erroneous and prejudicial to the defendant.
We note the charge, which is not excepted to, that it is unlawful to possess more than certain quantities of intoxicating liquors, for the purpose of correcting a misconception of our statutes. It is not against our law to have in possession liquor, lawfully obtained, for one's own use, but it is indictable to have any quantity in possession for the purpose of sale, and the possession of more than one gallon is prima facie evidence of the illegal purpose. *Page 569 
It was also error to charge that proof of the possession of more than one quart of liquor made out a prima facie case against the defendant, and if this was a correct statement of the law it was erroneous to give to thisprima facie case the legal effect of devolving the laboring oar on the defendant to satisfy the jury that he did not receive the liquor within fifteen consecutive days.
The possession of more than one gallon of liquor is made prima facie
evidence of having it for sale by statute (C. S., 3379), but no such artificial weight is given to the possession of one quart, and such fact is simply a circumstance for the consideration of the jury.
Nor does a prima facie case, when legally established, cast the burden on the defendant to satisfy the jury of his innocence. It is sufficient to carry the case to the jury, and upon it alone the jury may, not must, convict, but the burden remains with the State to prove the guilt of the defendant beyond a reasonable doubt.
It was so held in S. v. Barrett, 138 N.C. 630, and in the later case of S. v. Wilkerson, 164 N.C. 437, which has been frequently affirmed, and in which it is said, "It may, therefore, be taken as settled in this Court, at least, and we believe the same may be said of most, if not all, of the courts, that prima facie or presumptive evidence does not, of itself, establish the fact or facts upon which the verdict or judgment must rest, nor does it shift the burden of the issue, which always remains with him who holds the affirmative. It is no more than sufficient evidence to establish the vital facts without other proof, if it satisfies the jury. The other party may be required to offer some evidence in order to prevent an adverse verdict, or to take the chances of losing the issue if he does not, but it does not conclude him or forestall the verdict. He may offer evidence, if he chooses, or he may rely alone upon the facts raising theprima facie case against him, and he has the right to have it all considered by the jury, they giving such weight to the presumptive evidence as they may think it should have under the circumstances.
"The defendant is not required to take the laboring oar and to overcome the case of the plaintiff by a preponderance of evidence, is what we said in Winslow v. Hardwood Co., supra, and substantially the same thing was said in the other cases we have cited. This is undoubtedly the rule in civil cases, and it applies with the greater force to criminal cases, where the defendant has the benefit of the doctrine of reasonable doubt, and the presumption of innocence." S. v. Bean, 175 N.C. 749, affirms theWilkinson case, and is directly in point.
In view of these erroneous instructions, the final direction to the jury, based upon them, was equivalent to directing a verdict, which is not permissible in criminal cases. S. v. Alley, 180 N.C. 663. *Page 570 
The motion to nonsuit was not renewed after the introduction of evidence by the defendant, and it cannot therefore be considered. S. v. Killian,173 N.C. 792.
We have not discussed the prohibition amendment or the Volstead Act, because, in our opinion, not pertinent to any question raised by this appeal, but it may not be amiss to say that it would be a strange application of law to hold that a defendant, being tried in the State courts for violating a statute of the State, could be convicted because he had violated a Federal statute, or that giving to the Volstead Act the effect of striking down all provisions of State statutes in conflict with its terms it should have further operation to render a citizen of the State indictable under a State statute, which has had a material part stricken out without the consent of the General Assembly, and which as thus changed has never had the approval of the General Assembly.
It is also well to note that under the Volstead Act, as construed by the Supreme Court of the United States in Street v. Lincoln Safe Deposit Co., decided 8 November, 1920, it is not unlawful to possess liquor in one's dwelling, and that it was held in that case that, "Volstead Act, title II, sec. 25, making it unlawful to possess liquor intended for use in violating that act, does not make unlawful possession in a storage warehouse by one who intends to use the liquor in his own home for his family and guests, which is permitted by sec. 33 of the title."
This conclusion was reached upon a construction of sec. 33 of the Volstead Act, which is as follows: "It shall not be unlawful to possess liquors in one's private dwelling while the same is occupied and used by him as his dwelling only, and such liquor need not be reported, provided such liquors are for use only for the personal consumption of the owner thereof and his family residing in such dwelling, and of his bona fide
guests when entertained by him therein."
New trial.