## 12614. ROBINSON *v.* THE STATE.

BLOODWORTH, J. " The evidence relied upon by the State to connect the accused with the offense of having in his custody and control intoxicating liquor was wholly circumstantial in character, and did not exclude every reasonable hypothesis save that of the guilt of the accused. Accordingly the court erred in overruling the motion for a new trial." *Cummings* v. *State*, 25 *Ga. App.* 427 (103 S. E. 687), and cases cited.

*Judgment reversed. Broyles, C. J., and Luke, J., concur.*

DECIDED NOVEMBER 16, 1921.

Indictment for possessing intoxicating liquor; from Harris superior court — Judge Kent presiding. May 28, 1921.

A county policeman (the only witness for the State) testified, that he, with other county policemen, saw a car drive up from a public road and stop in a grove in front of the defendant's house about ten or eleven o'clock at night, and saw persons get out of the car, but " could not tell what direction they went;" they returned to the car in about an hour, and the witness heard them setting jugs in it, the car turned around and started back in the direction from which it had come, and he and the other officers stopped it, about 50 yards from the defendant's house, and found in the car about nine gallons of corn whisky and a white man and two negroes. He did not see the defendant that night. The witness went back to the defendant's place the next morning about sunrise and found hidden in the woods back of the house, " about across three acres of land," fifteen gallons of whisky in a jar and in a keg, covered with cloth. While there he saw the defendant going across the woods with a brace and bit in his hands, about 50 yards from where the whisky was found, and the defendant, on being asked which way he was " headed to," said he was looking for an ax that he left over there the day before when cutting wood. The witness then showed the whisky to the defendant, and the defendant said he was very much surprised to see it. He told the witness to search his house at any time the witness wished to do so. Nothing was said about the ownership of the whisky. The public road in front of the defendant's house runs north and south, and his house is on the west side; the witness was on the east side when the car drove up. There is a tenant house about 75 yards from the defendant's house and between the defendant's house and where the whisky was found in the woods; the witness did not know whether the persons who

left the car went to the tenant's house, but " they were obliged to have gone that way." Mr. Ira McGee lived up the road from the defendant's house, and a white man named Jeter lived about 75 yards back of the defendant's house. The witness did not see a path leading to the whisky. A path on the edge of the woods came along by the tenant house. The witness saw two persons with an empty keg or jug leave the woods before he saw the defendant; they were going towards the tenant house; they were coming up a wire fence which led to the tenant house and from there to the defendant's house.

Several witnesses 'were introduced by the defendant, and persons who were in the car and were arrested by the State's witness testified that they did not get any whisky from the defendant and did not see him. The defendant, in his statement at the trial, said that he knew nothing about the whisky before his attention was called to it by the State's witness.

*J. B. Burnside, J. R. Lunsford,* for plaintiff in error.

*C. F. McLaughlin, solicitor-general,* contra.