## 13661. DAVIS *v.* THE STATE.

BROYLES, C. J. The evidence relied upon to connect the defendant with the offense charged was entirely circumstantial, and, though consistent with his guilt, was not sufficient to exclude every other reasonable hypothesis. The court, therefore, erred in overruling the motion for a new trial.

    *Judgment reversed. Luke and Bloodworth, JJ., concur.*

    DECIDED JULY 12, 1922.

Indictment for possessing liquor; from Forsyth superior court — Judge Blair. April 29, 1922.

Sheriff Merritt, of Forsyth county, testified, that the first time

he saw Henry Davis, the defendant, he saw two Overland cars — little fours — going north, towards Dawson county, "just about good dark," and that, with his deputy, Bennett, he lay in wait that night and until between two and three o'clock in the morning, when two cars of the same kind, which in his opinion were the same cars, came back; that he and his deputy put two sills across the road, to block the cars coming back, and when he saw them in the distance, approaching, he went towards them to a point in the road about 200 or 300 yards from the block, and got behind bushes and let the first car pass and reach the block, where it stopped when the other car was about even with him; that there was then an attempt to turn the second car around, and he ran out to stop it, and the two men who were in it got out, and he did not get either of them then but found twenty or forty gallons of liquor in the car; that he "finally got one when he came up afterwards;" that this man said in jail, "when they were all there together," that "he lived in Stone Mountain, and this defendant said he lived in Stone Mountain; the parties that filed the claim for the automobiles said they lived in Stone Mountain;" that "the car that Davis was in was the front car," and there was another man with him. On cross-examination this witness said that he "couldn't say the defendant was in either car going up," and that the only reason he identified the cars was that one had the curtains up — the one that had the whisky in it; that he saw no connection between the cars, and saw no sign from the front car to the second car; and that he did not see the defendant with any whisky, and did not see any whisky in the front car, but saw a quart bottle or pint bottle when he got to the first car.

Bennett testified: "I was sort of even with the block at the time the cars were captured. I saw this defendant Henry Davis in the front car that was captured. When the front car was approaching the block and about the time it made its stop, there was a bottle of whisky thrown from the car, . . but I don't know who threw it out; . . the front car didn't have whisky. . . I did not see this defendant with any liquor at all; I couldn't swear who threw the bottle of whisky from the car; the other car, with the whisky, was some three or four hundred yards behind the front car; . . I did not see anybody flash any light

or give any signal from the front car to the rear; I was where I could see. As well as I recollect, . . Richardson was driving the front car, and not the defendant.

The defendant, in his statement at the trial, said that Richardson came through Stone Mountain in a car, going to a sister and brother-in-law, and asked him to go in the car with him; that he did so, and on their way back "these men" stopped them; that if there was any whisky in the car, or if Richardson had any, he did not see it; that he (the defendant) did not have any, and did not see any from the time he left home until they got back.

*John T. Dorsey, J. P. Fowler,* for plaintiff in error.
*John S. Wood,* solicitor-general, *Lindley W. Camp,* contra.