## . 13737.   GIBBS *v.* THE STATE.

BROYLES, C. J.   The circumstantial evidence relied upon to convict the defendant was not sufficient to exclude every reasonable hypothesis save that of his guilt, and therefore the court erred in overruling his motion for a new trial.

*Judgment reversed.   Luke and Bloodworth, JJ., concur.*

DECIDED JULY 25, 1922.

Accusation of possessing liquor; from city court of Tifton — Judge Price. June 5, 1922.

Gibbs was convicted upon an accusation charging possession, custody, and control of intoxicating liquor. The liquor in question was whisky in a jug found in a hole dug in the ground near a branch in open woods at a distance estimated as being from about 325 to 400 yards from the defendant's house, and some distance beyond his fence, which it was testified was about 200 yards from the house. The State's witness, the deputy sheriff, testified: " I do not know whose land it was. I understand Mr. Gibbs is a cropper, and do not know whether the land outside of the field was in his possession or not. He told me that he had been down across the field to this woods back and forth a few times, going after his cow and calf." There was a plowed field between his house and the fence, and the witness and others, after searching his residence and out-buildings for liquor, and not finding any, crossed the plowed field and the fence. There was no path in the field between the house and the fence, but several tracks led to and from the house and the fence; " and where these tracks went up to the fence there was a stump just over the fence in the woods side, and one could see where some had put their foot up in the fence and stepped over on the stump, and from this stump there was a well-beaten path to where the whisky was found." There was no other path leading up and down the fence, so far as the witness knew. He looked around but could see no other tracks leading to or from where the whisky was found. Tracks could not have been seen in the woods. One of the men who accompanied the deputy sheriff testified: " Mr. Wiggins and myself and Mr. Gibbs went back through the field, and as we went through the field I told Mr. Gibbs to put his foot in some of the tracks, and he put his foot in several of the tracks, and all of the tracks were smaller than his. The tracks could not have been made by a shoe as big as the one he was wearing. He told us he had gone down across the field, back and forth a time or two, to see about his cow and calf. I did not see any cow or calf or any other stock down there in the woods. . . Mr. Gibbs told us that he knew nothing about the whisky and that it was not his." Another witness testified to the same effect. It was testified that across the branch, and at a distance nearly the same as the distance

from the defendant's house to the place where the liquor was found, another person lived, and that there was a little house " a good deal nearer." The defendant, in his statement at the trial, said that a man and a boy had been living in this little house, but had moved out a few days before. He denied knowledge of the whisky. He said: " There was a path leading from the big road up at the corner of my field, which came down by the side of my field, and this path went on down by the-side of the fence and over into another plantation about a half mile. There was also a path on the outside of my fence over in the woods, going to where the whisky was found.' . . I saw other people going back and forth from my yard, across my field, where these tracks were found, and they were going to the river fishing."

*Smith & Christian,* for plaintiff in error, cited: 25 *Ga. App.* 427; 27 *Ga. App.* 581; Id. 582; Id. 603.

*R. E. Dinsmore,* contra, cited: 55 *Ga.* 326 (6) ; 59 *Ga.* 738 (6) ; 73 *Ga.* 76 (1).