# 𝔚𝔶𝔱𝔥𝔢𝔳𝔦𝔩𝔩𝔢

## O. B. HILTON V. COMMONWEALTH.

June 21, 1923.

1. INTOXICATING LIQUORS—*Possession of Liquors—Indictment—Purpose of Possession.*—In an indictment under the prohibition act (sections 16, 17, Acts 1918, pp. 591, 592) for the unlawful possession of ardent spirits elsewhere than in a *bona fide* home, it is unnecessary either to allege or prove any illegal purpose because the unlawful possession alone constitutes and completes the crime denounced by those sections.

2. INTOXICATING LIQUORS—*Presumption from Finding Liquor on Premises— Section 28 of the Prohibition Act—Evidence Sufficient to Support Verdict—Case at Bar.*—In the instant case liquor was found in an uncompleted building, still in the process of construction, intended for use as a hotel. The building was on a lot owned by defendant but not occupied by him. The workmen on the day of search were engaged in working on the building. Defendant admitted that he owned the lot but denied all knowledge of the liquor.

   *Held:* That a conviction could not be sustained under this evidence unless the *prima facie* presumption created by section 28 of the prohibition act (Acts 1918, p. 599) was applicable, and that this presumption was not applicable, because accused was neither the occupant of the premises nor in charge of the premises within the meaning of the act.

3. INTOXICATING LIQUORS—*Presumption from Finding Liquor on Premises— Section 28 of the Prohibition Act.*—Under section 28 of the prohibition act (Acts 1918, p. 599), providing that the finding of liquor shall be *prima facie* evidence against the "person or persons occupying such premises," such a person may be the owner, the tenant, or some other, who at trial sustains a relation to the premises with immediate control thereof which is so intimate as to show occupancy and hence to suggest guilty knowledge that such contraband whiskey was there and held for an illegal purpose; and the word "proprietor," in this section, when considered in connection with the context, should not in this statute, imputing crime, be construed to include an owner or any other who is neither an occupant nor one in charge of the premises.

4. CRIMINAL LAW—*Presumption of Innocence.*—The accused is presumptively innocent until his guilt is proved.

Error to a judgment of the Circuit Court of Giles county.

*Reversed.*

The opinion states the case.

*W. B. Snidow* and *Martin Williams*, for the plaintiff in error.

*John R. Saunders, Attorney General, J. D. Hank, Jr., Assistant Attorney General,* and *Leon M. Bazile, Second Assistant Attorney General,* for the Commonwealth.

PRENTIS, J., delivered the opinion of the court.

The accused has been convicted under an indictment which (omitting the introductory and concluding words) charged the offense in this language: "That O. B. Hilton, within one year next prior to the finding of this indictment, to-wit; on the 3rd day of December, 1921, did unlawfully have in his possession, buried, concealed and stored in the ground of the basement of a house he, the said O. B. Hilton, was then erecting at Pembroke, in said county, to be used by him as a hotel, twenty gallons of ardent spirits, held in two containers of ten gallons each."

[1, 2] 1. There was a demurrer to this indictment, which was overruled, and this is one of the errors assigned.

It is contended for the accused that the indictment charges no crime, because it failed to allege that the accused had the whiskey for sale. It is only necessary to cite sections 16 and 17 of the act to show that this view cannot be maintained. (Acts 1918, pp. 591-2.) The unfinished hotel building then being erected is not alleged to be, and in fact was not, the *bona fide* home of

the accused, and its possession in such a place is clearly prohibited and made unlawful by those sections. In an indictment.for the unlawful possession of ardent spirits elsewhere than in a *bona fide* home, it is unnecessary either to allege or prove any illegal purpose because the unlawful possession alone constitutes and completes the crime denounced by these sections. The.demurrer was properly overruled.

2. Another error assigned is that the verdict is unsupported by the evidence, and that the court erred in overruling the motion of the accused to set it aside for that reason. This is all the evidence which was introduced for the prosecution:

"A. J. Hardwick was sworn and testified that he is a deputy sheriff of Giles county; that on the 3rd day of December, 1921, in pursuance of a search warrant he searched an uncompleted building, and which was still in process.of construction, stituated at Pembroke, Giles county, Virginia, and was being built for the defendant, O. B. Hilton, on lands owned by him, the said O. B. Hilton; that the building had been partly weather-boarded and floors laid but no doors or windows had been placed, though the basement of the building did have a door; that when he searched there were several carpenters or other workmen at work on the house, but that he did not remember at the time he was testifying who any of the men were; that the cellar, or basement of the said building, was locked when he went there and he went to the home of the defendant, which was on a separate lot and not adjoined to or connected with the building searched, but did not find the defendant there, and was informed that the defendant was in Bluefield, West Virginia, whereupon he asked the defendant's wife for the key to the cellar door and she told him that she knew nothing about it; he went back to the build-

ing where the workmen were still at work and drew the staple of the cellar door, and entered and searched the building, but found nothing, and leaving the building unlocked went away; that the defendant had gone to Bluefield on the day previous to the search and he expected him to return on the train which should arrive at Pembroke at 7:30 P. M., and not being satisfied with his search he went back and about eight o'clock searched the place again; when he went back he found the door again locked and he pulled the staple and entered and seeing some fresh dirt in the floor of the cellar, he dug into it and found there twenty gallons of whiskey in two containers, which he seized; this was on Saturday, and the defendant did not return to his home till the following Tuesday, when he arrested him; the building in which the whiskey was found was on a lot owned by the defendant, but was incomplete and was not occupied by the defendant, but workmen were, on the day of the search, engaged in working on the building; that he understood that the house was being built for a hotel."

The record also shows that "The defendant was sworn and testified in his own behalf, and said that he owned the lot on which the building was being erected and that it was not completed at the time of the search; that no doors or windows had been placed; it was partly enclosed and some of the floors laid and that anyone could have entered it and gone from the cellar to the roof; that while the main floor had been laid there was an opening in it going down into the cellar which was intended for the stair steps down that way; that he had not locked the cellar before he left home and did not know that it was locked, and if locked he did not know who had locked it; that on the day preceding the search he had gone to Bluefield and other places in

West Virginia on business and did not return till on Tuesday following; that he knew nothing of the search till on his return he was arrested for the offense; that he had several men at work on the building at the time of the search; that it was near the public highway through the county; that it is not adjoined to nor connected with his dwelling house; that the said building was not then occupied by him nor is it now occupied by him, but is still unfinished; that he did not put the whiskey there; that he did not authorize anyone to put it there; that he did not permit anyone to put it there; that he did not know that it was there; that he did not then know who put it there and does not now know who put it there; and that the only information he has of its being there is what he has heard, in and about the prosecution of this case; that the whiskey was not his; that it was not in his possession, and never had been, and that he knew nothing whatever about it; that he never handled any whiskey and that he could tell nothing more about the transaction than what he had told."

It is apparent from the recital of this testimony that this conviction cannot be sustained unless the *prima facie* presumption created by section 28, Acts 1918, p. 599, * is applicable.    That the trial court was of opinion that this presumption should be applied is apparent from the instruction which was given over the objection of the prisoner in these words:

"The court instructs the jury that the finding of ardent spirits in any room, building or other place

---

"*Sec. 28.    Finding of ardent spirits or United States liquor dealer's tax receipt prima facie evidence: who to be tried.—Whenever ardent spirits shall be seized in any room, building, boat, car or other place, searched under the provisions of this act, the finding of such ardent spirits or of a United States liquor dealer's tax receipt in any such place, shall be *prima facie* evidence of the unlawful manufacturing, selling, keeping and storing for sale, gift, or use, by the person or persons occupying such premises, or by any person named in any United States internal revenue tax receipt posted in any room or found anywhere on said premises, or elsewhere, and the proprietor or other person in charge of the premises where such ardent spirits are found, or who is so named in such United States government tax receipt, shall be tried on the charge of manufacturing, selling and keeping and storing for sale unlawfully, such ardent spirits, under the indictment and form prescribed in section seven of this act, and the liquor found upon said premises delivered to the commissioner."

searched by an officer under the provisions of the pro-
hibition law of Virginia, shall be *prima facie* evidence
of the unlawful keeping or having the same by the
person occupying the premises."

[3] We are of opinion that this indicates an erroneous
construction of section 28. It applies to the "person or
persons occupying such premises," for this is the limit-
ing language used in the section. Such a person may
be the owner, the tenant, or some other, who at trial
sustains a relation to the premises with immediate con-
trol thereof which is so intimate as to show occupancy
and hence to suggest guilty knowledge that such con-
traband whiskey was there and held for an illegal pur-
pose. Such an one being in actual possession and con-
trol usually does know what is on his premises, and can
require the removal of everything to which he objects.
Because of the difficulty of identifying the guilty agent,
the General Assembly has created the presumption.
That this presumption is so limited is again indicated
in the subsequent clause which directs the prosecution
of the "proprietor or other person in charge of the pre-
mises where such ardent spirits are found." The word
"proprietor" when considered in connection with the
context, should not in this statute, imputing crime,
be construed to include an owner or any other who is
neither an occupant nor one who is in charge of the pre-
mises. The manifest purpose of this statute would be
defeated if extended to include owners who are not in
actual possession of the premises. It is intended to
promote the conviction of those who are guilty, but to
extend the presumption further will make it easy to con-
vict the innocent. Many owners of lands do not occupy
them, and the reason for the statute fails as to those
who are not occupants of their lands.

The evidence in this case fails to show that the accused was either the occupant of the premises or that he was in charge of the premises at the time the whiskey was found thereon, and hence there is no *prima facie* presumption of his guilt.    Without this statutory presumption, the evidence is insufficient to support the verdict.

[4] The accused is presumptively innocent until his guilt is proved, and the trial court erred in refusing to set aside the verdict and grant him a new trial.    This court will do so, and remand the case for a new trial if the Commonwealth shall be so advised.

*Reversed.*