Argued December 10, 1924, reversed January 13, 1925.

## STATE *v.* CLARENCE BUOY.

(232 Pac. 623.)

**Criminal Law—Corroborative Evidence Merely Showing Commission of Crime Held Insufficient.**

1. In prosecution for unlawful possession of intoxicating liquor, evidence to corroborate testimony of accomplice, which merely showed finding of liquor on defendant's premises, thus proving only commission of crime by someone, but not showing by whom, *held* insufficient under Section 1540, Or. L.

**Intoxicating Liquors—Evidence Held not to Show Conscious Possession of Liquor Warranting Conviction.**

2. In prosecution for unlawful possession of intoxicating liquor, evidence that liquor was found upon the defendant's premises *held* insufficient to sustain conviction; conscious possession of liquor not having been proved.

See (1) 16 **C. J.** 701.   (2) 33 **C. J.** 762.

1. Necessity for corroration of testimony of accomplice, see notes in 71 **Am. Dec.** 671; 34 **Am. Rep.** 408; 98 **Am. St. Rep.** 158. See, also, 1 **R. C. L.** 166.

From Douglas: J. W. HAMILTON, Judge.

Department 1.

REVERSED.

For appellant there was a brief and oral argument by *Mr. Albert Abraham.*

For respondent there was a brief and oral argument by *Mr. Guy Cordon,* District Attorney.

BURNETT, J.—The defendant was charged in a Justice's Court in Douglas County with the crime of the unlawful possession of intoxicating liquor. Convicted in that court, he appealed to the Circuit Court where a like result ensued. His sole assignment of error is that

"The court erred in overruling the motion of the defendant for a directed verdict."

A *résumé* of the testimony therefore becomes necessary. In effect, the evidence discloses this state of affairs: The defendant was a brakeman in the employ of a railroad company running trains between Roseburg in Douglas County and Ashland in Jackson County. On behalf of the state a witness testified in substance that he was the agent in charge of a certain dwelling in Roseburg and that about the 1st of July, 1923, some woman called him over the phone and agreed to rent the house paying the rent in advance and that on the following morning the defendant appeared and paid the rent saying at the time that he was paying it for another person, whom the agent, his recollection being refreshed, said was Mrs. Bowles, who was a half-sister of the defendant. The testimony likewise shows that the defendant occupied a bedroom in that house during the times he stayed in Roseburg, being absent a considerable part of the time on his run on the railroad.

The house is rectangular in form. Part of the front is cut off for a porch. Going upon the porch one turns to the right through a door into a living-room from which a door on the left leads into a bedroom. Continuing farther on from the living-room one enters a dining-room to the left of which is another bedroom, in the rear of which is a bath-room opening only into the latter bedroom. Going farther from the dining-room past the second bed-room the observer enters a kitchen, on one side of which to the rear of the bathroom is a small room. Across the kitchen from the bathroom and this small room is another room opening likewise into the dining-room, but which is of no importance.

The state offered a single witness whom it admits to be an accomplice, who testified in substance that a few days prior to July 30th, the defendant told him to take an automobile belonging to the latter, ac-company one Nora Jones, who lived at the house described, go into the country, get some moonshine whisky and return it to that house. The witness says that accordingly he took the defendant's automobile and the woman mentioned, went into the country, got the moonshine whisky in a gallon jar, which in turn was put into a sack, and returned to Roseburg. The woman got out of the automobile a few blocks from the house and went hither on foot while the witness drove down the alley back of the house and delivered the whisky to the woman in the woodshed. This con-stitutes all the testimony as to how the liquor was conveyed to the premises. The defendant all this time was absent on his run on the railroad. Re-specting knowledge of the defendant that the liquor was delivered upon the premises, the accomplice testified thus:

"Q. Now then after you put that in the woodshed did you tell Clarence Buoy at any time that you had put it in the woodshed or that you had brought it?

"A. No, sir,—Nora Jones met me at the woodshed and took it in the house.

"Q. And you know that Clarence Buoy was in Ashland or off on his run at that time?

"A. Yes, sir. * *

"Q. I say Clarence Buoy, up to the time that he was arrested or up to the time that the officers came there in the morning, so far as you know, did not know yet that you had brought that liquor there, so far as you know of your own knowledge?

"A. Why he asked me if I would bring it in that day.

"Q. Well, that was two or three days before?

"A. Well, that was the day that he had set for me to go out after it.

"Q. But you had no conversation with him before he was arrested, between that time and up to the time he was arrested, did you?

"A. No, sir."

The state's testimony further shows, that armed with a search-warrant sworn out by the sheriff of the county during the afternoon of July 30th, one of his deputies accompanied by two other officers went to this house at 7 o'clock on the morning of July 31st, and having gained admission, they found the defendant there and proceeded to search the house. The rear bedroom was occupied at the time by the defendant's sister and the door was locked. The defendant had occupied the front bedroom. The officer tried the door of the rear bedroom and, finding it locked, called upon the defendant for a key and the latter said he would open the door, but he was prevented by the officer from doing so, and the door was opened from the inside by the defendant's sister, whereupon the officer entered and found, as he says,

two pint bottles of liquor in a pan of water in the bathroom. Upon further investigation they found the gallon jar buried in a duck-yard in the rear of the premises. The defendant denies all the testimony of the accomplice who says he went after the liquor, and denies all knowledge whatever of liquor being on the premises. After both sides had rested their case, according to the bill of exceptions:

"The defendant through his attorney filed and submitted a motion for a directed verdict in words and figures as follows: 'Comes now the defendant by his attorney * * , and moves the court to direct a verdict of not guilty, for the reason that the evidence is insufficient to justify a conviction, or be submitted to the jury; and further, no competent evidence has been introduced to show that the defendant had knowledge that the intoxicating liquor found on the premises, known as No. 427 Pine Street, was there before it was seized by the officers.' "

The denial of this motion is the sole error assigned.

1. There are two questions for consideration in this case; the effect of the testimony of an accomplice, and the nature of the possession required to fulfill the terms of the statute. As to the first question the law is codified in this state in Section 1540, Or. L., reading thus:

"A conviction cannot be had upon the testimony of an accomplice, unless he be corroborated by such other evidence as tends to connect the defendant with the commission of the crime, and the corroboration is not sufficient if it merely show the commission of the crime, or the circumstances of the commission."

In its brief, the prosecution justly concedes that the witness who drove the car out to get the liquor was an accomplice, and if a conviction is to be had, he must be corroborated in some way tending to connect the defendant with the commission of the crime.

Aside from his own testimony all the other evidence in the case only tends to show the commission of a crime, that is, that someone committed the crime in question. The officers who gained admission to the house found there and on the premises adjacent some intoxicating liquor. With certain exceptions, not material here, the possession of intoxicating liquor is a crime. The stuff is outlawed, and it is manifest that someone had had possession of that liquor because it was bottled and in a measure concealed. But who caused it to be put there is not disclosed by any evidence except the testimony of the accomplice. Hence the corroboration is not sufficient because it merely shows the commission of the crime by someone, but by whom is not in any manner revealed by the testimony of the officers, or otherwise, except by the accomplice.

2. As to the possession, the question is settled by the majority opinions in *State* v. *Cox,* 91 Or. 518 (179 Pac. 575), where in substance it was decided that the possession contemplated by the law was a conscious possession, so that the statute means that the defendant must "knowingly" have had possession of the liquor. As to possession on account of being found in the place where the defendant resided, this case is to be distinguished from *State* v. *Harris,* 106 Or. 211 (211 Pac. 944), in which the defendant was charged with violation of the same enactment here involved. There, in addition to the fact that the liquor was found in the defendant's rooms which he and his wife occupied together over the store which they kept, the sheriff found in the defendant's living-room and bedroom a copper boiler, a coil, a still for the distillation of spirituous liquor, and a mash barrel which contained small particles of mash, the appearance and odor of which indicated that it had

been used but a short time before the search. The
sheriff also found, concealed behind an ironing-
board in a small storeroom adjoining defendant's
bedroom and living-room, five pint bottles of moon-
shine whisky, and in a catch-basin, in the alley from
seventy to eighty feet from the store, a quantity of
mash. These circumstances, so patent in their nature
as to be presumed to be within the knowledge and
observation of the defendant, are sufficient to differ-
entiate that case from the one in hand. In the in-
stant contention there is nothing whatever to show
that the defendant had any knowledge of the liquor
being upon his premises. No one is shówn to have
spoken to him on the subject and there is no circum-
stance or utterance except that of the accomplice
indicating how the liquor came to be there.

A kindred question was also under consideration
in *State* v. *Moss,* 95 Or. 616 (182 Pac. 149, 188 Pac.
702), where the defendant was indicted for larceny
of cattle and some of the evidence was directed to
his recent possession of them. The evidence relied
upon was to the effect that the cattle in question were
found running in a band on the public open range
most of which band belonged to the defendant and
about sixty head thereof were the property of other
parties. The holding there was that the possession
required in such instances was a conscious posses-
sion and the law is not satisfied by merely showing
constructive possession. The rule is thus stated in
17 R. C. L., page 73:

"The general rule that the possession of stolen
property is evidence of guilt is limited by the rule
that to warrant an inference of guilt it must further
appear that the possession was personal, and that it
involved a distinct and conscious assertion of posses-
sion by the accused. It would be pushing the rule
too far to require of one accused of a crime an ex-

planation of his possession of the stolen property, when such possession could also, with equal right, be attributed to another. Hence the mere fact of finding stolen articles on the premises of a man of a family or in a place in which many others have free access without showing his actual conscious possession thereof discloses only a *prima facie* constructive possession and is not such a possession as will justify an inference of guilt by reason thereof."

In *State* v. *Drew,* 179 Mo. 316 (78 S. W. 594, 101 Am. St. Rep. 474), the court held that

"The finding of recently stolen articles on the premises of a man of a family, without showing his actual conscious possession thereof, discloses only a *prima facie* constructive possession, and is not such a possession as will justify a presumption of guilt by reason thereof."

At best, and conceding that the defendant was the lessee of the entire premises instead of merely the occupant of one room of the house, all that is shown independent of the testimony of the accomplice is that the liquor was found on the premises. There is no testimony that he knew of its presence. In fact, the only testimony on that point is that he was not informed of the delivery of the liquor at that place. This does not constitute the conscious possession required by the law as construed by the majority opinions in *State* v. *Cox,* which was decided under the very statute here involved. The connection of the defendant with the liquor rests solely upon the uncorroborated testimony of the accomplice. Such a situation is condemned in Section 1540, Or. L., quoted above.

For the reasons, therefore, that the accomplice is not corroborated and that the conscious possession construed by the case of *State* v. *Cox* to be required for a violation of this statute is not proven, the conviction

was erroneous. The court should have directed the jury to return a verdict of not guilty. The judgment of the Circuit Court is reversed and the cause remanded, with directions to that court to dismiss the action.

REVERSED AND REMANDED, WITH DIRECTIONS.

MCBRIDE, C. J., and RAND and COSHOW, JJ., concur.