## STATE v. FLINT

No. 4376.   Decided June 26, 1928.   (269 P. 476.)

*King & King,* of Salt Lake City, and *Bean & Hunt,* of Richfield, for appellant.

*Harvey H. Cluff,* Atty. Gen., and *L. A. Miner,* Asst. Atty. Gen., for the State.

BARKER, District Judge.

Defendant was found guilty by a jury of the crime of being a persistent violator of title 54, Compiled Laws of Utah, 1917, and acts amendatory thereof, or of what is commonly known as the Prohibition Act.   He was thereafter sentenced to serve an indeterminate term of imprisonment in the Utah State Prison, as provided by law.   This

appeal is prosecuted to reverse the judgment of the trial court.

Comp. Laws Utah, 1917, § 3343, and section 3345, as amended by chapter 66, Laws Utah, 1919, as amended by chapter 10, Laws Utah, 1925, so far as material here, provide:

"Except as hereinafter provided, the manufacture, sale, keeping, or storing for sale in this state, or offering or exposing for sale, or importing, carrying, transporting, advertising, distributing, giving away, exchanging, dispensing, or serving of liquors, are forever prohibited in this state. It shall be unlawful for any person within this state knowingly to have in his or its possession any intoxicating liquors, except as in this title provided."

"Any person convicted of violation of any of the provisions of this title shall be deemed guilty of a misdemeanor. * * * A person having once been convicted of a violation of any of the provisions of this title, except section 3361, who thereafter violates the provisions thereof, shall be considered a persistent violator of this title, and shall be deemed guilty of a felony, and, upon conviction thereof, shall be imprisoned in the state prison at hard labor for not less than three months nor than more than two years."

The evidence offered on the part of the state tended to establish the following facts:

On the evening of June 29, 1925, the defendant was arrested by the city marshal of the city of Richfield on a charge of drunkenness. He was confined in the city jail that night until some time during the afternoon of June 30th. While the defendant was so incarcerated, on the morning of June 30th, the sheriff of Sevier county appeared before a justice of the peace of Richfield, swore to an affidavit, and requested that a search warrant authorizing the search of the defendant's premises issue. Pursuant to this affidavit the justice issued a search warrant, commanding the sheriff to search the premises described therein (defendant's premises), and to seize any liquor found unlawfully in the possession of any persons at the premises described, and to arrest the parties found upon the premises.

Thereupon the sheriff, accompanied by one of his deputies and the city marshal, who had arrested the defendant, proceeded to the premises described in the warrant, which was the residence of the defendant, but found nobody present, and the doors of the house locked. Under the sheriff's direction a door was forced open and entrance made by the officers into the house. Upon a table in the northwest room of the house the officers found two flasks each containing a small quantity of liquid. The liquid contained in one of the flasks was of a brownish color, while that contained in the other was white. An old bathrobe was found hanging on the wall and in the pocket of this garment another flask was found containing a small quantity of brown colored liquid. The table stood immediately in front of an outside window and there were no blinds or shades upon the windows. A towel was thrown over two of the flasks, while the other flask was in plain sight. The officers gave it as their opinion that the liquid contained in the three bottles was moonshine whiskey.

The defendant testified: That he had been a resident of Richfield for 15 years, and that he also maintained a residence at Fish Lake during the summertime. That he had been at the latter place during the latter part of the month of June, 1925, and that he had returned to Richfield on the afternoon of the 29th, from Fish Lake where he had been for a period of three days. Upon his arrival in Richfield he went to a restaurant to obtain something to eat, and then, about 5 o'clock in the afternoon, drove down to his residence or premises in question. He took from his automobile a box which he had brought with him from his place at Fish Lake, which contained some empty milk bottles and dirty clothes. He put the box, together with its contents, at the corner of the house, but did not enter the building. Thereupon he immediately went back up town, was arrested by the city marshal, and placed in the city jail, where he was confined until about 2 o'clock p. m. of the succeeding day. Upon being released from jail, accompanied by one

Thomas Egan, he went directly to his home. He then and there discovered that the door leading to the northeast room had been broken open. This door had been kept locked by being braced from the inside by means of a strip of wood which was placed, one end against the floor and the other end up against the inside of the door, in such a manner as to keep it securely closed. He testified that the door had been broken during his absence at Fish Lake, and that, in its present condition, a person standing on the outside could put his hand through the door and by removing the brace from under the doorknob open the door. That he kept pigeons and a dog upon the premises, and that during his absence from home he had arranged with one Bracken to look after these, and that during the month of June the said Bracken had had access to the house, being in possession of a key to the door to the building. That Bracken had left Richfield some time during the month of July. Defendant denied any connection with the alleged liquor which had been seized by the officers. His testimony was that he first saw the exhibits at the preliminary hearing; that he had never seen them before and had never had them in his possession; that they were not in the house when it was last occupied by him.

One Henry Kyhl testified as a witness for the defense that during the month of July he was living at Fish Lake; that during that month he was arrested by the sheriff and charged with selling intoxicating liquor; that after his arrest he had a conversation with the sheriff, in which the sheriff stated to him that he was not after him (Kyhl) and would have the case against him dismissed, and would give him $50, if he would testify that he got the liquor which he was charged with selling from George Flint, the defendant in the instant case. On cross-examination the witness testified that the sheriff told him that he knew where the goods came from and that, if he would say that it was Flint's, they would release him; that he thereupon told the officers that he did not know anything about the matter; and that

he did not get the liquor in question from the defendant, Flint.

Thomas Egan, another witness called by the defense, testified that he was a cook employed at a local hotel, and had worked there for five years; that he was acquainted with the defendant and had been at his place of residence many times; that after the defendant was released from the city jail he went with him to his premises; that they there found that the door of the northeast room had been broken so that any one could put their hands through and open the door; that this condition was discovered by the defendant, in his presence, immediately after they had reached the house.

Melvin Christensen was called by the state in rebuttal, and testified that he was acquainted with the defendant; that he saw him on the 29th day of June; and that he (the witness) was drunk at the time, and thought that he had gone down to defendant's home with him. On cross-examination, however, the witness said that on the day he was first called to testify in the case he had stated to the defendant, his attorney, and Mr. Kyhl, that he believed he had gone with the defendant to a certain residence, but that he did not know whose it was; that he did not get out of the car; that defendant removed something from the car, but that he did not know what he did with it; that he had no remembrance of what occurred other than having gone somewhere with defendant on that occasion; that he (the witness) was drunk at the time and when he got up town he was arrested.

Fred L. Hansen was also called by the state in rebuttal, and testified that he resided in Richfield and was there on the 29th and 30th of June; thought that he remembered having seen the defendant on those days and was pretty sure he had rode up town with him; that he lived a block and a half from defendant's place and had passed him on the 29th of June at between 5 and 6 o'clock in the afternoon; that he did not see defendant at that time, but saw his car with some one sitting in it. On redirect examination

he testified that he knew defendant's address and could identify him.

Upon substantially the foregoing evidence the jury found the defendant guilty. He moved for a new trial, but his motion was denied. He now prosecutes this appeal. Numerous errors have been assigned. A brief in support of defendant's contentions has been filed, but no brief has been submitted in behalf of the prosecution.

It is very earnestly contended by counsel for the defendant that the conviction cannot stand because there is no sufficient competent evidence to support the verdict and judgment appealed from. For this reason we have set forth a rather complete summary of the testimony adduced at the trial..

At the conclusion of the state's case the defendant moved the court for an instructed verdict of not guilty. This motion having been overruled, at the conclusion of the introduction of testimony the defendant, in writing, requested the court to instruct the jury to return a verdict in favor of the defendant of not guilty. This request was likewise denied. Assignments of error No. 10 and No. 21 relate to the foregoing rulings of the court, and these two assignments can properly be considered together.

It conclusively appears from the record that at the time of the search of defendant's premises by the officers the defendant was confined in the city jail. It was therefore physically impossible for him to have occupied the premises on the night of June 29th or the morning of the 30th. No evidence was offered by the state proving, or tending to prove, when the defendant was last in the house, or was last actually occupying the premises. There is absolutely no evidence as to when, by whom, or under what circumstances the alleged liquor was taken to the defendant's place. There is no evidence that the defendant took it there, or that he had knowledge that it was there, or that he knew anything whatever concerning its presence there. The prosecution was unable to show when the defendant was

last in the city of Richfield before his arrest, how long he had been away, or whether the premises had been occupied by any other person during his absence. It, however, appears from the defendant's own testimony that he kept pigeons and a dog on the premises, and that during the month of June one Bracken had a key to the premises and was there looking after the pigeons and dog of the defendant. It appears that other parties had access to the house in the absence of defendant, and it further appears that the same had been broken into during defendant's absence. After a very careful reading of the entire record and a careful consideration of all of the evidence, we are clearly of the opinion that the evidence was insufficient, as a matter of law, to justify the jury in finding that the defendant knowingly had in his possession certain intoxicating liquor at the time and place and as charged in the information, and that the verdict is not supported by the evidence. We are of the opinion that there was no evidence to show that on the 29th day of June, 1925, the defendant, either knowingly, willfully, or unlawfully, had in his possession the intoxicating liquor described in the information; that there was no evidence to show that the liquor found on the premises was ever at any time in the possession of the defendant, or that the defendant knowingly possessed the liquor, or that at the time charged he had it in his possession for the purpose of selling, bartering, or giving it away in violation of law. The only conclusion possible to be drawn from the testimony would be that there might have been a constructive possession by the defendant, but no evidence was offered which tends to show that, if even a constructive possession, it was with the knowledge, consent, acquiescence, or approval of the defendant, and, for that reason, the jury would not be justified in drawing any inference or presumption that the liquor was in the possession of the defendant with his knowledge. The evidence conclusively shows that at the time the liquor was found in the premises it was not in the actual physical possession of the defend-

ant, nor were the premises themselves in his actual possession and occupancy at the time, nor is there any evidence to show when the premises had been last occupied by the defendant.

We believe the law to be well settled that under the facts and circumstances, as disclosed by the record in this case, it was error for the trial court to refuse defendant's motion for an instructed verdict, and again for the court to refuse to instruct the jury to return a verdict in favor of the defendant.

The foregoing conclusions are supported by the following authorities: In the case of *Hawkins* v. *State,* 142 Tenn. 238, S. W. 397, the evidence showed that the defendant had been in the possession of a house for two or three months, in which he had conducted a store, before it was searched by the sheriff. In the search in an old unused stove two bottles of Cascade whiskey were found. The defendant being convicted, he appealed, and the Supreme Court said that—

The finding of the whisky in the stove under the circumstances detailed "does not make a prima facie case of guilt. * * * There is no proof of any circumstances indicating that he knew the whisky was in the stove, or that he had placed it there by himself or his agent. There can be no proper conclusion from the evidence that he received the whisky unlawfully. * * * In fact, no conclusion can be reached that he was in possession of the whiskey at all." He denied that he knew anything about the whisky, "and the story is not unreasonable or unbelievable. The state has wholly failed to show that plaintiff in error was in possession of the whisky at all. The only evidence offered against him is the fact that the whisky was found in a stove which * * * was in the building where he conducted his business."

And in conclusion the court states:

"We think the facts proven have no direct and open connection with his guilt, and the presumption of innocence * * * is not overcome."

In *Tearney* v. *State,* 16 Okl. Cr. 723, 185 P. 1104, it is stated that the defendant ran a restaurant and rooming

house situated across the street from each other. Two police officers found nine half pints of whiskey in room No. 9 of the rooming house, in a dresser drawer, covered with heavy pieces of wrapping paper. The defendant denied any knowledge of the whiskey which was found, and testified that he had run the rooming house for about a year, and that a man named White, an oil field worker, had occupied room No. 9 for several months. His wife and son-in-law also testified to the latter fact. The court said:

"There is no conflict of evidence in the case. The undisputed facts, taken singly or as a whole, are not inconsistent with the innocence of the defendant. Conceding that they show constructive possession of the whisky found, there is no competent evidence tending to show an intent to sell the same. Upon the whole case, we are clearly of opinion that as a matter of law the evidence is insufficient to sustain the conviction."

And in *McAlester* v. *State,* 15 Okl. Cr. 78, 174 P. 1106, the court holds that it is well settled that it is the unlawful possession of intoxicating liquor which is criminal, and that proof of possession merely is not sufficient to authorize a conviction. Just as in Utah, the defendant must knowingly have the liquor in his possession.

In *State* v. *Waxman,* 93 N. J. Law, 27, 107 A. 150, it was held:

"In prosecution for illegal sale of liquors, charge that if defendant knew or had reason to know that his employees were selling liquor he is liable is erroneous, as attempting to base defendant's liability upon the law of negligence, and not upon criminal intent."

It was held in the *City of Jackson* v. *Gordon,* 119 Miss. 325, 80 So. 785, that:

"We think the lower court was correct in its interpretation of the law. The old rule that criminal intent must accompany a crime is still the law, even as to liquors, so far as we have been able to ascertain. There must be actual or constructive intent to do the thing which constitutes the crime; otherwise there is no criminal act. If it can be said that the liquor in this case was in the possession of the defendant merely because it was in his shop, when he did not

know it, still such possession, not being conscious, was not actual and intentional possession, as contemplated by the statute. We do not think it was intended by the act to hold a person guilty of the offense of unlawfully having in his possession liquor, where he did not know or was not conscious of the possession, even if by any stretch of reasoning it can be said that a person is in the possession of an article when he does not know of it."

In *Smith* v. *State*, 5 Ga. App. 834, 63 S. E. 928, the court said:

"Finding intoxicating liquors in the place of business of the defendant would ordinarily raise against him an inference of guilt; yet we think that where, as in this case, the evidence shows that the liquor was taken into the defendant's restaurant and hidden in a corner and covered up with dirt, without his knowledge, such inference of guilt would be fully removed; and a verdict of guilty, based alone on such inference would be wholly unauthorized."

The following cases are also in point: *State* v. *Cox*, 91 Or. 518, 179, P. 575; *State* v. *Buoy*, 113 Or. 217, 232 P. 623; *Frederick* v. *State*, 20 Ala. App. 336, 102 So. 146; *Halfmoon* v. *State* (Okl. Cr. App.) 230 P. 294; *State* v. *Brock*, 112 Or. 59, 228 P. 920; *Stansell et al.* v. *State* (Okl. Cr. App.) 235 P. 937; *Burnett* v. *State*, 29 Ga. App. 47, 113 S. E. 245; *Hilton* v. *Commonwealth*, 136 Va. 721, 117 S. E. 840; *Ward* v. *State*, 15 Okl. Cr. 61, 175 P. 60; *Huckelby* v. *State* (Okl. Cr. App.) 226 P. 1068; *People* v. *Mattos*, 67 Cal. App. 346, 227 P. 974; *Russell* v. *State* (Okl. Cr. App.) 221 P. 113; *Ammons* v. *State*, 20 Ala. App. 283, 101 So. 511; *Layer* v. *Commonwealth*, 204 Ky. 510, 264 S. W. 1097.

The following cases were also reversed for insufficiency of the evidence: *Chicco* v. *United States* (C. C. A.) 284 F. 434; *Smith* v *State*, 150 Ga. 655, 105 S. E. 364; *Wright* v. *State*, 25 Ga. App. 176, 102 S. E. 834; *Turner* v. *State*, 25 Ga. App. 234, 102 S. E. 847; *Teal* v. *State*, 27 Ga. App. 603, 110 S. E. 520; *Robinson* v. *State*, 27 Ga. App. 582, 110 S. E. 521; *Harris* v. *State*, 28 Ga. App. 241, 111 S. E. 214; *Harris* v. *State*, 28 Ga. App. 463, 111 S. E. 686; *Savage* v. *State*, 28 Ga. App. 543, 112 S. E. 523; *McCarty* v. *State*, 28

Ga. App. 625, 113 S. E. 31; *Taylor* v. *State.* 29 Ga. App. 57, 113 S. E. 98; *Gibbs* v. *State,* 29 Ga. App. 55, 113 S. E. 107; *Davis* v. *State,* 28 Ga. App. 772, 113 S. E. 115; *Burzo* v. *State,* 191 Ind. 319, 130 N. E. 796; *Hutter* v. *State,* 104 Neb. 9, 175 N. W. 645; *State* v. *Helms,* 181 N. C. 556, 107 S. E. 228; *Hayes* v. *State,* 145 Tenn. 629, 237 S. W. 1104; *Chandler* v. *State,* 89 Tex. Cr. R. 303, 231 S. W. 108; *Oliver* v. *Commonwealth,* 131 Va. 670, 108 S. E. 576.

We are of the opinion that the trial court erred in denying defendant's motion for a directed verdict, and also in refusing finally to direct the jury to bring in a verdict of not guilty.

Other assignments of error are relied on for a reversal of the judgment, but in view of the foregoing conclusions, it becomes unnecessary to consider further any such assignments.

The judgment appealed from is reversed, and the cause remanded to the trial court, with directions to grant defendant a new trial.

THURMAN, C. J., and CHERRY, STRAUP, and HANSEN, JJ., concur.

BARKER, *District Judge,* sat in lieu of FRICK, J.