[Crim. No. 2831. Second Appellate District, Division Two.—July 6, 1933.]

THE PEOPLE, Respondent, v. SAMUEL A. RANDOLPH, Appellant.

Orbison & Irwin for Appellant.

U. S. Webb, Attorney-General, and Alberta Belford, Deputy Attorney-General, for Respondent.

ARCHBALD, J., *pro tem.*—Appellant was accused by the district attorney of Los Angeles County, in an information consisting of two counts, of burglary. The first count alleged that appellant entered the office of Dr. H. B. Griffin, located at 5107 Hollywood Boulevard, with intent to commit theft. The count also charged three prior convictions. The second count contained a similar allegation on the same day, in entering the offices of Dr. Donald W. Wilkins, located at 4471 Sunset Boulevard. By another information appellant was charged with a violation of the state Narcotic and Drug

Act, on the same day, in having in his possession a preparation of morphine containing more than one-fourth grain of morphine to the avoirdupois ounce, in violation of said act. This information also alleged three prior convictions. A jury was waived and the two cases consolidated for trial before the court. The court found defendant guilty on all counts of both informations. From the judgment of conviction and the order denying his motion for a new trial defendant appealed.

Both doctors are dentists. The office of Dr. Griffin is located in a building at the northwest corner of Normandie and Hollywood Boulevard in Los Angeles. On January 8, 1933, at about 7 P. M. one Joe Meyer, who was standing on the southwest corner of said street, opposite said building, had his attention directed to the offices of Dr. Griffin, across the street, by "the flashlight I seen running up and down the wall". Accompanied by Eugene Barner and Ed Pugh, the janitor of the building, they went to Dr. Griffin's office, opened the door, walked in and turned on the lights. Just as they did this appellant came out of the dentist's laboratory. Appellant said he wished to see the doctor, as he had a toothache. The doctor was called and treated the tooth. Appellant was asked by Meyer what he was doing with the flashlight, to which he replied that "he used it in his car". Two officers came and questioned appellant. Officer Workman asked him "if he did not think it was an unusual hour to be 'in a dentist's office, that time of the night, Sunday evening, when there was no one there', and he said, 'Well,' he thought 'maybe it did look rather unusual, but he had a toothache and wanted to see a dentist to have his tooth treated'." Nothing was missing from the office, but after appellant left with the officers, Doctor Griffin found that gold that was "in several different places" in his laboratory "had been disturbed", and "part of it had been piled together in one little box".

Two police officers questioned appellant on January 9, 1933, at the jail "and he was sick, . . . too sick to talk". A doctor was called and "said he was a narcotic addict" and "was sick from narcotics". Before defendant was locked up he asked the officer "to look for his car", "a Buick 1926 coach, in the vicinity of where he was arrested", which had his bluish gray overcoat in it. On January 10th the offi-

cers found appellant's car in the Classic Garage, at Lexington and Vine Streets. Appellant went with the officers to the car, "produced a pink slip to the Buick automobile, and stated the car and overcoat was his". In the car the officers also found "flashlight batteries for a small vest-pocket flashlight, several pieces of gold, and gold solder, gold solder inlays, crowns and bridgework". This scrap gold and dental work was identified by Dr. Wilkins as his. He testified that he left his office on Friday night and, except for a few minutes on Sunday afternoon, was not there until Monday morning, at which time he missed such scrap gold, etc. The officers, in searching appellant, found among other things "a couple of passkeys" and "four bindles of morphine" sewed "in the seam of" the right-hand upper coat pocket. This morphine was the basis of the alleged violation of the state Narcotic and Drug Act.

Appellant contends that the evidence is insufficient to support the judgment.

There would seem to be no question about the sufficiency of such evidence to support the judgment as to count 1 involving the entering of Dr. Griffin's office. Patients seeking to have an aching tooth treated do not search for a dentist in the laboratory of a dark office on Sunday evening, with a flashlight. The fact that the gold scrap was partly piled in a small box in the laboratory from which appellant came when he was disturbed speaks volumes as to his intent.

As to the second count, appellant contends that the mere fact that the gold taken from Dr. Wilkins' office was found in his car two days after the burglary does not justify the inference that he entered Dr. Wilkins' office with intent to commit theft therein. Undoubtedly these facts standing alone would not justify the inference that must have been drawn by the court to justify the finding of guilt. (*People v. Hurley*, 60 Cal. 74 [44 Am. Rep. 55].) Regardless of where the car was found, the evidence clearly justified the inference that appellant left it near Dr. Griffin's office, where he was arrested and where he was caught under circumstances justifying the conclusion that he was after the same kind of booty, in the same kind of an office, on a day when the dentist conducting such an office is not apt to be in. In other words, the evidence under count 1 of the information charging burglary, in connection with the fact that

similar gold stolen from a similar office was found in defendant's car which was used by him in an evident attempt to get more of the same kind, justifies the inference that the gold so found was obtained in the same way, and indicates that the offense charged in the second count was also the act of appellant.

The evidence shows that four bindles of morphine were found sewed in the lining of appellant's coat. Appellant denies having any knowledge of its presence in his coat and claims to have purchased the coat second hand in some place on Main Street some time before. The act makes it unlawful for any person to have in his possession any opium, excepting upon the written order or prescription of a physician, dentist or veterinary surgeon, licensed to practice in this state. (Stats. 1929, p. 380, as amended by Stats. 1931, p. 1496; 2 Deering's Gen. Laws, 1931, p. 3007.) Such defense merely created a conflict with the *prima facie* case made out by the People showing that such morphine was in defendant's possession. Neither intent nor knowledge is an element of this offense. The mere possession is a violation of the act (*People* v. *LeBaron,* 92 Cal. App. 550 [268 Pac. 651, 269 Pac. 476]). The only perfect defense is a valid prescription under the act. Any other defense is for the consideration of the judge or jury, as the case may be; and the defense made having been rejected by the trial court, nothing remains to be considered on appeal in view of the fact of possession which the court must have found.

Judgment and order affirmed.

Works, P. J., and Stephens, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 3, 1933.