[Crim. No. 3797.   Second Dist., Div. Three.   Oct. 20, 1944.]

THE PEOPLE, Respondent, v. DARRELL DOLAN
OLIVER, Appellant.

Morris Lavine for Appellant.

Robert W. Kenny, Attorney General, and T. G. Negrich,
Deputy Attorney General, for Respondent.

DESMOND, P. J.—The defendant appeals from a judgment entered upon the rendition of a jury verdict by which he was found guilty of violating section 11160 of the Health and Safety Code of this state. He claims (1) that the verdict of the jury is contrary to law and evidence and is not sufficiently supported by the evidence produced at the trial; (2) that the statute under which he was convicted is unconstitutional; and (3) that the court erred in the admission and exclusion of evidence.

In considering these claims it seems advisable to state briefly the facts surrounding the arrest of the defendant and incidents of his trial. Two Los Angeles police officers attached to the Narcotic Bureau, together with an inspector for the State Narcotic Commission, called at an apartment occupied by the defendant about 7 o'clock in the evening and, upon being admitted without objection made by the defendant, conducted a search of the premises. They found a "roach," i. e., the butt of a marihuana cigarette, in the pocket of a brown leather jacket hanging in the closet and, in a pocket of a white shirt hanging there, a cigarette package containing two Philip Morris cigarettes and another rolled in brown paper. They found, also, several "roaches," beneath a davenport and in trash under the sink. These various articles were taken by the officers at the time the defendant was arrested and later were produced as exhibits at the trial. When the appellant was arrested, the officers took into custody a friend of his, named Herbert May, who entered the apartment while the search was under way.

Upon the trial, the People produced as an expert on the subject of marihuana an officer attached to the Los Angeles Police Department named J. A. Allen. He testified that he had examined the various articles above mentioned and that "the home-made cigarette," so-called, which was found in the Philip Morris package, contained marihuana. He also found marihuana, according to his testimony, in little packets containing scrapings from the pockets of the brown leather jacket. Two of the officers testified that the appellant, when he was asked at his apartment where he had obtained the marihuana cigarettes, said that he had purchased them "from a fellow down town" at the price of fifty cents apiece. Sergeant Hardy testified that the appellant, upon being asked if the brown leather coat was his, said it was.

The appellant, testifying in his own behalf, stated that he

did not own the leather jacket or the white shirt which were found by the officers in his apartment and, further, that Herbert May had left his clothes there with the permission of appellant and that May, upon being questioned, stated that certain items of clothing, a radio and trumpet were his. Appellant also denied that he had told the officers that he had bought any of the cigarettes for fifty cents apiece, or that he had bought them casually from some fellow on the street. He testified that on the day of his arrest he had no knowledge that there were any marihuana cigarettes in his apartment; that he did not at any time have or own the package of Philip Morris cigarettes in which the brown paper cigarette was found.

In determining the questions raised by this appeal, we are called upon to consider various sections of the Health and Safety Code, listed in division 10 under the general subject, "Narcotics." They read as follows:

*Section 11160.* "Except as otherwise provided in this division, no person shall possess, transport, sell, furnish, administer or give away, or offer to transport, sell, furnish, administer or give away, or attempt to transport a narcotic except upon the written prescription of a physician, dentist, chiropodist or veterinarian licensed to practice in this State."

*Section 11001.* " 'Narcotics,' as used in this division, means any of the following:

" (a) Cocaine.
" (b) Opium.
" (c) Morphine.
" (d) Codeine.
" (e) Heroin.
" (f) Alpha eucaine.
" (g) Beta eucaine.
" (h) Chloralhydrate.
" (i) All parts of the plant loco weed or of the plant cannabis sativa L., whether growing or not; the seeds thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin; but not including the mature stalks of such plant, [etc.] . . ."

*Section 11003.* " 'Cannabis sativa,' as used in this division, means the male and female of any species commonly known as cannabis sativa, hemp, Indian hemp, or marihuana."

Under the subhead, "Marihuana," it is provided:

*Section 11530.* "No person shall knowingly plant, cultivate,

cut, harvest, dry, or process any loco weed or cannabis sativa or any part thereof.''

*Section 11531.* ''It is unlawful to possess extracts, tinctures, or other narcotic preparations of hemp, or preparations or compounds containing more than two grains of cannabis sativa to each fluid or avoirdupois ounce.

''This section does not apply to corn remedies containing not more than 15 grains of the extract or fluid extract of cannabis sativa to the ounce mixed with not less than five times its weight of salicylic acid combined with collodion.''

In support of his claim that the verdict is contrary to the law and evidence and that the evidence is insufficient to support the verdict, the appellant argues that the prosecution failed to prove that the items concerning which the expert testified contained two grains or more of marihuana to the avoirdupois ounce. This argument ignores the fact that the defendant was not charged in the information lodged against him with unlawful possession of any extract, tincture or other narcotic preparation or compound as mentioned in section 11531 of the Health and Safety Code, but instead was charged with unlawfully and feloniously having ''in his possession flowering tops and leaves of Indian Hemp, (cannabis sativa), in violation of Section 11160.'' The marihuana expert called by the People did not examine, nor did he testify, concerning any extract or tincture, or narcotic preparation or compound, but testified that he found in certain of the articles which he examined a substance which he identified as marihuana, and stated that in his opinion the material in the brown paper cigarette was ''the leaves or flowering tops of cannabis sativa, commonly known as marihuana or Indian hemp.''

█ As to appellant's argument that no guilty exclusive possession of the prohibited narcotic was established by the evidence, we need only refer to our recital of the testimony and to say that the jury was entitled to believe the statements of the police officers rather than the statements of the defendant.

█ In support of his claim that the statute under which he was charged is unconstitutional, appellant contends that the provisions of the narcotic law are not clear as to what is or what is not forbidden by that law. He states that the use of the Latin expression ''cannabis sativa'' in the statute leaves the statute vague and uncertain and, therefore, unconstitutional, and cites *In re Lockett* (1919), 179 Cal. 581 [178 P.

134], as authority for his position. As we read that erudite opinion, however, we do not consider it as controlling in the instant case, for while the Latin botanical term "cannabis sativa" is employed in section 11001, Health and Safety Code, that term is expressly defined in section 11003 as meaning "hemp, Indian hemp, or marihuana." The police expert testified that cannabis sativa, Indian hemp and marihuana are synonymous terms.

█ The appellant's claim that the court erred in the admission and exclusion of evidence revolves around the testimony of Officer Allen and, in substance, asserts that he was not qualified to testify as an expert on the subject of marihuana. It appears, however, from the record that several years after his graduation from Occidental College, where he majored in chemistry, Mr. Allen entered the service of the police department and for a period of three and one-half years prior to this trial had been classified as a police chemist; that in that position he had had occasion to examine the substance known as the flowering tops and leaves of Indian hemp, and in the year preceding this trial had made 150 examinations of the material known as marihuana; that these examinations did not all refer to marihuana cigarettes but "some of the material was in a loose form in a bag, to determine whether or not it might be marihuana. Q. But some were in cigarettes? A. Many cases were." When he was asked what examination he made of the material in the brown paper wrapped cigarette, he stated: "The examination consisted of a microscopic examination of the material, noting its characteristics under magnification of the material in the brown paper wrapping. I took a small amount of the material contained within the cigarette and placed upon a glass slide. I added a drop or two of hydrochloric acid, and noticed the bubbling effect taking place as it reacted with the normal carbon dioxide, which is an integral part of the marihuana leaves. Q. Did you form an opinion as to what the contents of the cigarette is? A. I did. Q. And what is your opinion? A. My opinion is that the contents of the material in the brown cigarette paper are the leaves or flowering tops of cannabis sativa, commonly known as marihuana or Indian hemp."

We believe that his education and experience qualified this

officer to testify as a marihuana expert; that consequently no error arose when he was permitted to testify as such.

The judgment is affirmed.

Shinn, J., and Wood (Parker), J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied November 16, 1944.