[Crim. No. 4701. In Bank. June 25, 1946.]

THE PEOPLE, Respondent, v. MORRIS GORY, Appellant.

Frederic H. Vercoe, Public Defender, and William B. Neeley, Deputy Public Defender, for Appellant.

Robert W. Kenny, Attorney General, Everett W. Mattoon and Frank Richards, Deputies Attorney General, Fred N. Howser, District Attorney, and Jere J. Sullivan, Deputy District Attorney, for Respondent.

SPENCE, J.—In an information filed by the District Attorney of Los Angeles County, defendant was accused of (1) violating section 4573 of the Penal Code by unlawfully bringing marijuana into a prison farm; and (2) violating section 11160 of the Health and Safety Code in that he did, on or about June 2, 1944, "willfully, unlawfully and feloniously have in his possession flowering tops and leaves of Indian Hemp (cannabis sativa)," commonly called marijuana. It was also charged that defendant had suffered a prior felony conviction, grand theft. Defendant pleaded not guilty to the two offenses charged, but admitted the prior conviction. The cause proceeded to trial before a jury; Count I of the information was dismissed upon motion of defendant; and defendant was found guilty on Count II as charged. From the judgment of conviction entered upon this verdict and from

an order denying his motion for a new trial, defendant prosecutes this appeal. He contends that the evidence was insufficient to support the verdict and he specifies error in the matter of the instructions. A review of the record convinces us that the evidence was sufficient but we are further convinced that the failure of the court to instruct the jury fully and clearly resulted in such prejudice as to require a reversal.

There is practically no conflict in the testimony. At the time of the alleged possession of marijuana, defendant was a prisoner at the Los Angeles County Honor Farm near Castaic. He shared living quarters with some thirty odd prisoners in one of the camp's bunkhouses, to which he had been assigned in April, 1944. As part of the equipment issued to each prisoner, defendant received a metal box—18 inches long, 12 inches wide, 8 inches deep—in which he kept his toilet articles and small personal effects. There was no way of locking these boxes, each of which bore a number corresponding to the bed number of the space occupied by the particular prisoner. Each prisoner's box was placed on the floor near the head of his bed. During the day when the prisoners were engaged in their duties on the farm, one man was left in charge of the bunkhouse to "keep the inmates from monkeying with other people's property."

About 9:30 p. m. on June 2, 1944, Officer Gunderson and several accompanying officers entered the bunkhouse. While his associates searched the boxes of other prisoners in the bunkhouse, Officer Gunderson went to defendant's bed—on which defendant was lying—picked up the metal box bearing the number of defendant's bed, opened the box and found marijuana "scattered from the top, down to the bottom . . . just loose in the box." Said officer took off defendant's clothes and examined them, turning the pockets "wrong side out," but found no marijuana either on his person or in his clothes. Deputy Sheriff Huber, who was present at the time, testified at the trial that he asked defendant what he knew about this marijuana, stating: "This is your marijuana; where did you get it?" and that defendant did not answer. In his own testimony at the trial, defendant admitted that the material which the officers identified as marijuana was taken from his box, but stated that he had never seen it before the officers removed it from the box.

With the evidence so presented at the trial, defendant challenges the propriety of the trial court's action in reading, re-

reading, and then expressly withdrawing from the jury's consideration the following instructions, hereinafter designated "instruction 12" and "instruction 13."

Instruction 12: "In order for defendant to have in his possession the objects charged in the information, you must be convinced by the evidence and beyond a reasonable doubt that he *knowingly* had such objects in his possession. The meaning of the word 'possession' includes the exercise of dominion and control over the thing possessed."

Instruction 13: "Even if you find from the evidence beyond a reasonable doubt that the defendant had in his possession, flowering tops of Indian Hemp or loco-weed, before you can find the defendant guilty of possessing the same, you must also be convinced beyond a reasonable doubt that the defendant had a *guilty knowledge* of the character of said flowering tops of Indian Hemp and possessed a *guilty intent*. If you find that the defendant was innocent of the *knowledge of the character* of the flowering tops of Indian Hemp or did not have a *guilty knowledge* of possessing said flowering tops of Indian Hemp, then you will find the defendant not guilty and must acquit him."

The italicized language emphasizes the import of the instructions as argued by defendant; that is, instruction 12 directed to "knowledge" of the existence of the object as prerequisite to the "dominion and control" necessary to constitute possession; and instruction 13 directed to "knowledge" of the character of the object as being a prohibited poison.

So far as pertinent to defendant's argument, section 20 of the Penal Code provides that "In every crime or public offense there must exist a union, or joint operation of act and intent. . . ." But this does not mean that a positive, wilful intent to violate the law is an essential ingredient of every offense. Sometimes an act is expressly prohibited by statute, in which case the *intentional doing of the act,* regardless of good motive or ignorance of its criminal character, constitutes the offense denounced by law. Instances illustrating this principle may be found in statutes enacted for the protection of public morals, public health, and the public peace and safety. (*People* v. *McClennegen,* 195 Cal. 445, 469 [234 P. 91], and cases there cited.) ▪ If a specific intent is not made an ingredient of the statutory offense, it is not necessary to prove such specific intent in order to justify a conviction. (*People* v. *Dillon,* 199 Cal., 1, 11 [248 P. 230].) Speaking to this

point, the court in *People* v. *Sweeney,* 66 Cal.App.2d 855 [153 P.2d 371], a case concerning violation of the same code section here involved, said at page 859: ''Neither intent nor knowledge is an element of the offense herein charged. The mere possession, except as authorized by the provisions of the Health and Safety Code, is a violation of the act. The statute defining the offense charged against appellant does not declare that either intent or knowledge is an ingredient thereof. It provides that the mere possession of the narcotic named in the information shall subject the possessor to the penalties prescribed therein. It is only where, from the language or effects' of the penal law, a purpose to require the existence of such intent can be discovered that such an intent need be shown. In the case of *People* v. *O'Brien,* 96 Cal. 171, 176 [31 P. 45], there is contained an exhaustive discussion of the law of criminal pleading applying to cases of the character of the one with which we are concerned.'' See, also, *People* v. *Le Baron,* 92 Cal.App. 550, 568 [268 P. 651, 269 P. 476] ; *People* v. *Randolph,* 133 Cal.App. 192, 196 [23 P.2d 777] ; and *People* v. *Johnson,* 66 Cal.App.2d 164, 165 [152 P.2d 331]. Although in a prosecution for the unlawful possession of narcotics it has been said that ''Guilty knowledge and intent to violate the law may be shown by the facts and circumstances of the case, including the conduct of the defendant and any false or misleading statements which he may make to the arresting officers or others with relation to the material facts'' (*People* v. *Gibson,* 64 Cal.App.2d 537, 539 [149 P.2d 25]), such observation was made in a case where defendant sought to justify or explain his admitted possession of the drugs with full knowledge of their character. It was obviously not intended to indicate thereby that ''guilty knowledge and intent to violate the law'' were essential elements requiring proof in every prosecution for possession.

While it thus appears that ''mere possession, except as authorized'' is sufficient to constitute the statutory offense in question, without regard for *scienter* or specific intent to violate the law as would follow from evidence establishing defendant's *knowledge of the contraband character* of the property, the law makes the matter of knowledge in relation to *defendant's awareness of the presence* of the object a basic element of the offense of possession. It has been repeatedly held that the term ''possession'' as used in the State Poison Act (now embraced in the Health and Safety Code) means

an "immediate and exclusive possession and one under the dominion and control of defendant." (*People* v. *Herbert,* 59 Cal.App. 158, 159 [210 P. 276] ; *People* v. *Sinclair,* 129 Cal. App. 320, 322 [19 P.2d 23].) Thus it was said in *People* v. *Noland,* 61 Cal.App.2d 364, 366 [143 P.2d 86] : "A person has 'possession' of a chattel who has physical control with the intent to exercise such control, or, having had such physical control, has not abandoned it and no other person has obtained possession. (Rest., Torts, sec. 216.)" But knowledge of the *existence* of the object is essential to "physical control thereof with the intent to exercise such control" and such knowledge must necessarily precede the intent to exercise, or the exercise of, such control. (*People* v. *Gallagher,* 12 Cal.App.2d 434, 436 [55 P.2d 889] ; *People* v. *Bassett,* 68 Cal.App.2d 241, 247 [156 P.2d 457].) The materiality of such issue as a matter of defense has been recognized in numerous instances by our appellate courts. Thus, in *People* v. *Randolph,* 133 Cal.App. 192 [23 P.2d 777], the effect of the defendant's denial of "having any knowledge of [the] presence" of "four bindles of morphine . . . found sewed in the lining of [his] coat" was discussed at page 196: "The act makes it unlawful for any person to have in his possession any opium, excepting upon the written order or prescription of a physician, dentist or veterinary surgeon, licensed to practice in this state. . . . Such defense [lack of knowledge of the presence of the morphine] merely created a conflict with the *prima facie* case made out by the People showing that such morphine was in defendant's possession. Neither intent nor knowledge is an element of this offense. The mere possession is a violation of the act [citing authority]. The only perfect defense is a valid prescription under the act. Any other defense is for the consideration of the judge or jury, as the case may be; . . ." See, also, *People* v. *Charley Quong,* 5 Cal.App.2d 137, 139 [42 P.2d 386] ; *People* v. *Gin Shue,* 58 Cal.App.2d 625, 628 [137 P.2d 742] ; and *People* v. *Sweeney,* 66 Cal.App.2d 855, 859-860 [153 P.2d 371].

The distinction which must be drawn, from a reading of the foregoing authorities, is the distinction between (1) *knowledge of the character of the object and the unlawfulness of possession thereof* as embraced within the concept of a specific intent to violate the law, and (2) *knowledge of the presence of the object* as embraced within the concept of "physical control with the intent to exercise such control," which con-

stitutes the "possession" denounced by the statute. It is "knowledge" in the first sense which is mentioned in the authorities as being immaterial but "knowledge" in the second sense is the essence of the offense.

■ In line with these authorities, it plainly appears in this case that instruction 13, as above quoted, in requiring the finding of a "guilty knowledge" and a "guilty intent" on the part of defendant to sustain his conviction, was properly withdrawn from the jury as an improper matter for consideration.

■ But instruction 12, as above quoted, in its predication of a finding of guilt upon defendant's *"knowingly"* having "in his possession the objects charged in the information," should have been given to the jury. "The word 'knowingly' imports only a knowledge that the facts exist which bring the act or omission within the provisions of this code. It does not require any knowledge of the unlawfulness of such act or omission." (Pen. Code, § 7, subd. 5; *People* v. *McClennegen*, 195 Cal. 445, 469 [234 P. 91].) Thus instruction 12 invoked the element of knowledge in the sense of defendant's *awareness of the presence* of the marijuana in the box given him for the storage of·his personal effects at the prison farm and so presented to the jury an issue of fact determinative of defendant's guilt or innocence of the possession prohibited ·by statute.

The importance of proper instructions on the question of defendant's possession of the forbidden property is readily apparent from the record in this case. Matters tending to establish defendant's guilt are the fact that the marijuana was found in his box and the circumstance of his silence in the face of Officer Huber's accusation in the camp's bunkhouse. (8 Cal.Jur. 103, and cases there cited.) Matters tending to establish defendant's innocence are the fact that the box was unlocked, showing that the marijuana conceivably could have been placed there by some one other than defendant, and defendant's denial at the trial that he had ever seen the "stuff" prior to its discovery by the officers. Thus, this may be said to be a "close case" on the record before us. It is readily distinguishable from those cases where the evidence includes express admissions and statements made by defendant with respect to the possession of narcotics, which supplied the final link in the chain of circumstances connecting defendant with the offense charged against him. (*People* v. *Gallagher,* 12 Cal.App.2d 434, 436 [55 P.2d 889] ; *People* v.

*Rose,* 26 Cal.App.2d 513, 517 [79 P.2d 737] ; *People* v. *Oliver,* 66 Cal.App.2d 431, 432 [152 P.2d 329] ; *People* v. *Sweeney,* 66 Cal.App.2d 855, 858 [153 P.2d 371] ; *People* v. *Bassett,* 68 Cal.App.2d 241, 248 [156 P.2d 457].) Likewise distinguishable are those cases where the required possession of drugs was shown by testimony that the defendant threw the drug out of the window, or otherwise disposed of it upon the approach of the arresting officers, and that it was later returned and identified as having been in the custody and under the control of defendant prior to his arrest. (*People* v. *Belli,* 127 Cal.App. 269, 270-271 [15 P.2d 809] ; *People* v. *Rodrigues,* 25 Cal.App.2d 393, 394 [77 P.2d 503] ; *People* v. *Terrazas,* 42 Cal.App.2d 281, 282 [108 P.2d 680] ; *People* v. *Johnson,* 66 Cal.App.2d 164, 165 [152 P.2d 331].) Here the principal fact relied upon by the prosecution is the finding of marijuana in defendant's unlocked box and because of the denial by defendant of knowledge of its presence there, it was the duty of the trial court, on proper instructions, to submit to the jury the question as to whether defendant had knowledge of the presence of the marijuana. (*People* v. *Gin Shue,* 58 Cal. App.2d 625, 628 [137 P.2d 742].) To fail to instruct on that point might well have misled the jury into believing either that knowledge was not essential or that any object found among defendant's personal effects was conclusively presumed to be there of his own knowledge. The error which would be involved in an express declaration to that effect is obvious, for knowledge is essential and though the finding of an object among defendant's effects would support an inference, it would not give rise to a conclusive presumption that the object was there with defendant's knowledge.

Nor under the facts in evidence does it appear, as contended by the prosecution, that the trial court's giving of two other instructions, hereinafter designated "instruction 9" and "instruction 15," satisfied the requirements of the law on this determinative issue of defendant's knowledge of the presence of the marijuana found in his box.

Instruction 9: "Possession of narcotics as charged in the information means an immediate and exclusive possession and that such narcotics were under the dominion and control of the defendant."

Instruction 15: "If you believe beyond a reasonable doubt that the defendant, on or about the 2d day of June, 1944, at

and in the County of Los Angeles, State of California, did wilfully, unlawfully and feloniously have in his possession flowering tops and leaves of Indian Hemp (marijuana), as charged in the information, you should find the defendant guilty as charged.''

Instruction 9 properly defines the term ''possession,'' but it makes no reference to the element of knowledge in the sense required for a finding of guilt of the statutory offense involved, and it is questionable whether from mere connotation of the definition itself an inference of the necessity for such finding would arise. This latter consideration becomes more apparent in view of the fact that instruction 9 states the same legal proposition declared in instruction 12, which was withdrawn: '' 'possession' includes the exercise of dominion and control over the thing possessed.'' In withdrawing instruction 12 the court specifically directed the jury to disregard the principles stated in that instruction, and after such remark, instruction 9 was not reread to the jury. This action could not have had any effect other than to detract greatly from the force of instruction 9 and any attendant implications which might normally arise therefrom. ▮ Nor was the situation clarified to an appreciable extent by instruction 15 in its correlation of defendant's guilt with ''wilfully'' having ''in his possession'' marijuana.

Our code provides that ''the word 'wilfully,' when applied to the intent with which an act is done or omitted, implies simply a purpose or willingness to commit the act, or make the omission referred to. It does not require any intent to violate law, . . .'' (Pen. Code, § 7, subd. 1.) While thus the word ''wilfully'' invokes the element of knowledge in the sense here required, the word was not defined in the instructions to the jury. This fact is material in view of the court's withdrawal of instruction 12, directed to the same element of knowledge in requiring that defendant must ''knowingly'' have had ''in his possession the objects charged in the information'' in order to be found guilty. (Pen. Code, § 7, subd. 5.) In this confusion in the submission of the essential issue of fact to the jury for consideration in the determination of defendant's guilt, it is doubtful, to say the least, whether the jury would infer from the word ''wilfully'' the element of knowledge in the required sense.

It may be possible to argue that taking the instructions as a whole, they were sufficient to have informed the jury in a

general roundabout way that before defendant could be convicted of the statutory offense of the possession of marijuana, the evidence must show his *knowledge of the presence* of said property in his box; but since knowledge, in that limited sense, is an essential element of the offense, he was entitled under the circumstances to a specific instruction, such as the requested instruction 12, to clarify the situation.

It therefore follows that the reading, rereading, and subsequent withdrawal of the requested instruction 12 constituted error and we are convinced, under the state of the evidence presented on this essential element of knowledge, that such error must be treated as prejudicial.

The judgment and the order denying defendant's motion for a new trial are reversed.

Gibson, C. J., Shenk, J., Edmonds, J., and Traynor, J., concurred.

SCHAUER, J.—I concur in the judgment and agree that it was prejudicial error to fail to give (to withdraw) instruction number 12. I do not agree to the implication, if there be such, that mere conscious possession of an object, not knowing its true character (as, for example, possession of marijuana believed in good faith to be ordinary tobacco), any more than conscious possession of an object lawful in itself but within which, unknown to the possessor, contraband is concealed, constitutes a criminal act.

Carter, J., concurred.