[Crim. No. 2064.   Third Dist.   Apr. 29, 1948.]

THE PEOPLE, Respondent, v. ABRAHAM SHAPIRO, Appellant.

Burt W. Busch for Appellant.

Fred N. Howser, Attorney General, and Doris H. Maier, Deputy Attorney General, for Respondent.

THOMPSON, J.—The defendant was charged, under section 11500 of the Health and Safety Code, with the unlawful

possession of marijuana cigarettes. He pleaded guilty, and was sentenced to state prison. He subsequently claimed that he was induced to waive counsel and to plead guilty by the fraudulent representations of the narcotic officers that if he did so he would be imprisoned in the county jail, only, for a period of 90 days, and not be sentenced to state prison. He moved to set aside the judgment of conviction on that ground. The motion was denied. From that order this appeal was perfected.

After a preliminary hearing, an information was filed in Lake County, charging the defendant with unlawful possession of marijuana. The information was filed on the same day the defendant was held for trial by the magistrate. The arraignment was also had on that day. The defendant appeared at the arraignment without counsel. He was definitely informed by the court of his rights, including his right to be represented by an attorney. He then waived time to plead, and to his right to an attorney. The following colloquy occurred between the judge and the defendant at the arraignment:

"The Court: Now, this matter is on for arraignment. Do you want an attorney? The Defendant: I don't feel it will be necessary. The Court: Do you have an attorney? The Defendant: I don't have one. The Court: Do you want one? The Defendant: No, your Honor, I don't. The Court: As I state to you, you are entitled to time in which to plead to the charge set forth in the information, and you can either do that or enter your plea at this time. The Defendant: I would like to plead guilty to this charge. The Court: You understand what you are doing, do you? The Defendant: I fully understand all the law on this. The Court: That is what the law requires, that you be fully informed."

Moreover, the defendant testified at the hearing of the motion to set the judgment aside, that "the Judge told me my rights—that I could have an attorney, and . . . I said no, I didn't think . . . that I needed one."

Thereupon the defendant entered his plea of guilty to the charge and asked for probation. The pronouncing of sentence was continued and the matter was submitted to the probation officer who filed her report 15 days later, recommending that probation be denied. That report reads in part:

"Statement of Defendant,—'I came along to Lake County for a vacation on May 10, 1947, and stayed three weeks at Loch Lomond, and Hoberg's Resorts. I registered under the

name of Daniel Sorel. I brought marijuana cigarettes with me solely for my own personal use, but did not keep my supply with my other personal belongings because I am well aware of the laws involved, so hid them on the grounds near by. I never sold any cigarettes to other guests or juveniles because I knew that that is a very serious offense. I am definitely a gentleman smoker, and use marijuana merely because I like the effects.' ''

The probation officer also reported that ''The defendant has cooperated in every respect, and has given information as to location of supplies of marijuana,'' and that the officer was informed of no previous violations of the narcotic laws, or other offenses, by the defendant.

Based on that report, probation was denied and the defendant was sentenced July 12, 1947, to imprisonment in San Quentin for the term prescribed by law.

Subsequently, the defendant employed an attorney and filed an application in said court and cause, on October 2, 1947, supported by affidavits, to set the judgment aside as void, on the grounds previously stated. The motion was heard by the court on the last-mentioned date. The defendant and his attorney participated in that hearing. Oral and documentary evidence was adduced. The defendant, the probation officer, and two narcotic enforcement officers were sworn and examined. The motion was denied.

■ There is no merit in the contention that the defendant was not informed of his legal rights at the time of arraignment, as the previously-quoted record clearly shows. He waived his right to be represented at the trial by an attorney, and to a continuance for the purpose of his plea. ■ There is adequate proof of the fact that the defendant was knowingly possessed of marijuana cigarettes at the time and place charged in the information. (*People* v. *Gory*, 28 Cal.2d 450, 456 [170 P.2d 433].) Mr. Armstrong, a state narcotic enforcement officer, with many years of experience as such, testified that when he arrested the defendant at Hoberg's Resort he was actually smoking a marijuana cigarette. He said, ''When I entered the cabin he was in the act of smoking a marijuana cigaret. . . . He said it was a marijuana cigaret.'' The witness testified that the defendant sent for him the day after he was placed in jail, and told him ''He wanted to make a clean breast of this thing and get it over with and get away from this stuff. And he said, 'If you want me to,

I'll go on back and show you where the rest of it is hid.' So, we went back and found some more marijuana.''

Another officer corroborated the fact that they returned to Hoberg's Resort and recovered other marijuana cigarettes from the place where the defendant had concealed them. The report of the probation officer also discloses the fact that the defendant told her he ''brought marijuana cigarettes . . . for my own personal use, but did not keep my supply with my other personal belongings because I am well aware of the laws involved, so hid them on the grounds near by.'' He also told the officers where he had more marijuana stored in his trunk at Los Angeles. This furnishes satisfactory evidence that the defendant was in the unlawful possession of marijuana at the time and place charged, and that he knowingly violated the statute against possession of narcotics.

■ Upon the issue as to whether the defendant was fraudulently persuaded to plead guilty to the charge by the alleged misrepresentations of the narcotic enforcement officers, there is a conflict of evidence. The defendant testified that he was induced by the alleged fraudulent statements of the narcotic enforcement officers to waive representation by an attorney and to plead guilty to the charge. He said the narcotic officers came to the sheriff's office and talked with him about pleading guilty to the charge; that one of them had ''a legal pamphlet,'' and that Mr. Armstrong entered his cell and talked with him for about 30 minutes. The defendant stated that ''just he and I'' were then present; that Armstrong said, '' 'Now, we want you to turn up this stuff you got buried. . . . If you plead guilty and cooperate fully you'll have to do ninety days in the County Jail. . . . With good time off—with time off for good behavior—you'll only have to do seventy-five days. . . . Well, [in that way] you'll beat San Quentin. . . . Why don't you plead guilty, it is the best thing; and uncover this stuff.' '' The defendant denied having ''anything at all'' concealed or buried. But he later admitted having cigarettes concealed at Hoberg's Resort, and in his trunk in Los Angeles. The defendant testified that the narcotic officers left, but that Armstrong returned in about 20 minutes and said to him, ''Let's go get this stuff.'' When asked if he did go and procure the cigarettes for them, he said, ''Yes, I went to a point about three hundred yards in back of my cabin; it was in a forest. And I had about eight or ten cigarets in a bottle, and I dug—dug the bottle up and said, 'Here they are.' '' The defendant stated that he thought

that "everything was cut and dried," and relying on the officers' assurance that he would be imprisoned in the county jail only, for 90 days, he agreed to and did plead guilty. There was some discussion about a more serious offense of furnishing other persons with marijuana. In explanation of his agreement to plead guilty to the mere possession of marijuana, the defendant said, "I—it was just a simple possession; that is, it's—I'm—definitely I was smoking it; that is, I'm not involved in any way [with furnishing marijuana to others]."

Mr. Armstrong testified that:

"The defendant sent for me. The sheriff's office called me and asked me if I wanted to go up there, and I said I would. . . . And he said he wanted to make a clean breast of this thing and get it over with and get away from this stuff. And he said, 'If you want me to, I'll go on back and show you where the rest of it is hid.' So, we went back and found some more marijuana; then we came back here. Then again he sent for me. . . . And I went up and he said, 'Still I haven't told you everything.' . . . 'As long as it is going to go this way and I'm going to get away from this stuff, I also have a considerable amount hid somewhere else.' And he told me where this was hid and we eventually got it. It was in Los Angeles."

Regarding the alleged inducements of the officer for the defendant to plead guilty, and the alleged misrepresentations regarding the penalty, the following colloquy occurred in Mr. Armstrong's testimony:

"Q. What did you say to him? A. I asked him to turn up his supply of narcotics. . . . Q. Did you tell him . . . that he would only receive a County Jail sentence if he entered a plea of guilty? A. I did not. Q. Did you offer him anything if he turned up the narcotics for you? A. No, I did not. Q. Tell him it would go better for him if he did? A. No. . . .

"Q. Mr. Armstrong, as I understand your statement, when you were at the County Jail the night of the defendant's arrest, he asked you about the penalty in this case. . . . What case was he discussing? How did you know what sections to refer to? A. He wanted to know what he was going to be booked on; I told him. . . . Section 11500 of the Health and Safety Code. Q. Did you tell him what that was? A. I did. Q. Then he asked you what the penalty was for that? A. He asked at least three or four times before we reached the County Jail, and again after we got in there; and I told him what the penalty was. Q. Well, when did you tell him? A. 1

told him enroute from Hoberg's and I told him at the jail. He seemed to doubt my word. Q. What did you tell him? I thought you didn't tell him at all, you let him read it? A. I did. Q. What did you tell him the penalty was? A. I told him it was nothing to six years in the penitentiary, or ninety days in the County Jail. . . . He said, 'I don't believe you.' So I went and got the Act and showed it to him. Q. You showed him the sections which he read, did you? A. Yes, sir. Q. What section did you show him? A. Showed him 11500 and I showed him the penalty section, whatever that is. I don't recall what that is. . . .

"Q. Didn't you tell him, Mr. Armstrong, something about a County Jail sentence if he pleaded guilty? A. No, sir, I did not. Q. Didn't you tell him at any time that if he entered a plea of guilty that he would beat San Quentin, if he pleaded guilty to simple possession? A. No, sir."

Mr. Fred L. Stem, another state inspector, who assisted Mr. Armstrong in the investigation of this offense, and who was present at the time of the arrest and conveyance of the defendant to the county jail, fully corroborated the latter in his denial that the defendant was induced to plead guilty by any coercion, threats or misrepresentations regarding the penalty for the offense, or otherwise. He testified that when they were taking the defendant from Hoberg's Resort to the county jail he believed Mr. Armstrong and the defendant sat in the front seat of the automobile, and that he sat in the rear seat. He said in that regard, "If I remember rightly, he [the defendant] was riding in the front seat with Mr. Armstrong. . . . I wouldn't be positive of that." The witness said, that during that trip "there was quite a bit of conversation relative to the case. . . . We were both asking him as to the source of marijuana"; that the defendant insisted he was not smoking marijuana, and denied his guilt of any violation of the narcotic law, but he was asking what charge was to be filed against him, and what the penalty was for that offense. The witness said "I explained to him personally that the penalty on possession of marijuana was anything from ninety days to six years." He said the defendant "was doubtful; he didn't think that it would come under a felony classification." The morning after the defendant was placed in jail, the inspectors went to see him "at the request of the defendant. . . . He asked for us to—on several occasions—to come to his cell." Mr. Stem said that, on one of those occasions, the defendant expressed doubt as to their statement of the penalty, and that,

at defendant's request, Mr. Armstrong went out and got the pamphlet from his car and pointed out to the defendant the section applicable to the penalty for possession of marijuana. The witness said he thought that section was 11715 of the code. But he was evidently mistaken as to the penalty section. He said Mr. Armstrong handed defendant the pamphlet, and that "Mr. Shapiro read it himself." Mr. Stem testified that the defendant inquired what would be the effect on his sentence if he disclosed the source of his marijuana. To that question the witness said that "He was told that if he would assist in divulging the source of his marijuana that whatever he did the facts would be told to the district attorney, and in turn the district attorney would usually inform the judge; that those facts would be taken into consideration when sentence was pronounced." The record shows that the fact of the defendant's disclosure of his remaining stock of marijuana was made known to the court. The report of the probation officer favorably mentioned the defendant's disclosure of his possession of other marijuana which had been secured by the officers. There was no misrepresentation in that regard.

Concerning the defendant's charge of alleged fraudulent inducements for him to plead guilty, on the part of the officers, Mr. Stem emphatically denied those allegations. He further testified in that regard:

"Q. At any time during that ride from the resort to the County Jail here in Lakeport, did you tell Mr. Shapiro that you could be influential in getting him off easier if he plead guilty? A. No. Q. At no time did you promise him that if he plead guilty he would receive a lesser sentence? A. No. . . . Q. At that time [in the County Jail] did you or Mr. Armstrong make any representations to Mr. Shapiro that if he plead guilty he would get a lesser sentence? . . . A. No promises or representations, no."

The defendant could not have been misled regarding the penalty for the offense with which he was charged. If he was shown section 11715, as Mr. Stem thought that he was, it was not applicable to this case for it applies only to obtaining narcotics upon forged or fictitious prescriptions. But the penalty for such offenses is specifically fixed at "imprisonment in the county jail for not less than six months nor more than one year, *or in the State prison for not more than six years.*" The statute which applies to this case is the first paragraph of section 11712 of the Health and Safety Code, which must have

been the section pointed out to the defendant, at his request. It reads in part:

"Any person convicted under this division [division 10] *for having in possession any narcotic,* or of violating the provisions of Sections 11530 or 11557 shall be punished by imprisonment in the county jail for not less than 90 days nor more than one year, *or in the State prison for not more than six years.*" (Italics added.)

That is exactly what the inspectors testified that they told the defendant regarding the penalty. Regardless of which section was read by the defendant, he could not have been misled into believing that the penalty for having possession of marijuana was a mere misdemeanor punishable only by imprisonment in a county jail, for both sections include penalties in state prison. If the defendant was deceived regarding the penalty for the offense, he must have deceived himself. It seems clear that the defendant was well informed regarding the violation of the narcotics laws. He evidently speculated on receiving a mere sentence to the county jail in the event of disclosing the location of the other marijuana which he had concealed, and in pleading guilty to the charge. He was plainly told and he must have fully realized that it was discretionary with the trial judge to determine whether a county jail or state prison penalty would be imposed.

We are convinced that the record on appeal sustains the order denying defendant's motion to set aside the judgment on the ground of alleged fraud or inducement on the part of the officers. We are of the opinion the defendant was not deceived with respect to the penalty imposed by law as punishment for the unlawful possession of marijuana. It was the sole province of the trial judge to determine whether the penalty should be imprisonment in the county jail or in the state prison. We may not interfere with that sound discretion. Nor may we usurp the power of the trial court by determining the credibility of witnesses or the weight to be given their testimony. Unless there appears to have been a clear abuse of discretion on the part of the trial court, the judgment should stand. (*People* v. *Brahm,* 98 Cal.App. 733 [277 P. 896]; *People* v. *Lamb,* 64 Cal.App.2d 409, 412 [148 P.2d 873]; 8 Cal.Jur. 582, § 579.)

The order denying defendant's motion to set aside the judgment is affirmed.

Adams, P. J., and Peek, J., concurred.