[Crim. No. 4377.   Second Dist., Div. Three.   Oct. 6, 1949.]

THE PEOPLE, Respondent, v. JOSEPH E. HARDEMAN
et al., Defendants; ROBERT WHITE, Appellant.

Francis D. Thornton and Alexander L. Oster for Appellant.

Fred N. Howser, Attorney General, and Howard S. Goldin, Deputy Attorney General, for Respondent.

WOOD, J.—Appellant, Robert White, and one Hardeman were charged with violation of section 11500 of the Health and Safety Code in that they unlawfully had in their possession a preparation of heroin. Hardeman pleaded guilty. Appellant was found guilty in a jury trial. He appeals from the judgment and sentence.

■ Appellant contends that the evidence was insufficient to support the judgment. Officers found 22 capsules of heroin in the possession of defendant Hardeman soon after he had alighted from appellant's automobile in which he had been riding with appellant, and they also found 29 capsules of heroin in the clean-out pit of the fireplace at appellant's home. Appellant argues that the heroin was not in his possession and under his control.

On February 14, 1949, about 4:30 p. m. appellant, accompanied by Hardeman, was driving his automobile north on Union Avenue near Ingraham Street in Los Angeles. At that intersection Hardeman got out of the automobile and entered a near-by alley. Appellant continued north one block, turned right on Wilshire Boulevard, drove one block east and turned right on Valencia Street. Two officers, who were in an automobile and had observed the actions of defendants, apprehended Hardeman in the alley and at that time Hardeman dropped a cellophane package containing 22 capsules of heroin. Three officers, who were in another automobile, followed appellant and apprehended him at Valencia and Ingraham Streets. The officers took the defendants to the office of the Narcotic Division in the State Building where they questioned them regarding the heroin. Three officers then took appellant to his home. They searched the premises and found a box containing empty gelatin capsules in the medicine cabinet in the bathroom, a bottle containing empty gelatin capsules in a dresser drawer in appellant's bedroom, a bottle containing 29 capsules of heroin in the clean-out pit of the fireplace (on the outside of the house), and a hypodermic needle and a plastic holder in a chicken coop in the backyard. The officers and the appellant then returned to the State Building.

Officer Hawkins testified that, in a conversation with appellant after returning to the State Building, appellant said

that the heroin which had been found in the clean-out pit of the fireplace was his; that appellant said that he and Hardeman had purchased some heroin from a man named Mexican Dave for $125, and he (appellant) had paid $75 of that amount and Hardeman had paid $50; and that appellant stated that he and Hardeman then went to appellant's home, put the heroin in capsules, "more or less" split the capsules between them, and appellant then put the capsules in the "flue." He also testified that statements made by appellant to him were free and voluntary, and that no force or violence was used upon appellant. At the trial appellant testified that he did not tell the officer that he and Hardeman had purchased heroin or that they had "capped" heroin. He also testified that, when the officer questioned him before they took him to his home, Officer Hawkins hit him in the stomach with a coco-cola bottle wrapped in a towel, slapped his mouth, and kicked him on the leg.

Appellant testified further that on the day he was arrested Hardeman asked him to take Hardeman to a hospital to see a friend; that while on the way there Hardeman said he wanted to go into a hotel "about some money"; that when they were on Union Avenue near Wilshire Boulevard, Hardeman, after saying "pick me up about 5 or 10 minutes," jumped out of the moving car, and appellant drove to Wilshire Boulevard and around a corner, and then the officers arrested him. Appellant testified that he and his wife were roomers at the house where the heroin was found, and that three other persons also lived in the house; that he had not seen the empty capsules which were in the medicine cabinet in the bathroom and that other persons had access to that room; that his wife had purchased the empty capsules, which were in the bedroom, to use in taking medicine that had been prescribed by a doctor. With reference to the hypodermic needle which was found in the chicken coop, he testified that he did not have access to, and had not been in, the back of the premises where his landlady kept chickens.

Hardeman, called as a witness by appellant, testified that the 22 capsules of heroin in the cellophane package, and the 29 capsules of heroin in the bottle found in the clean-out pit of the fireplace, were his; that on February 13, 1949, about 10 p. m. he bought a bottle of 51 capsules of heroin from his friend "Dave," and that he paid $125 for it; that he then put 22 of those capsules in a cellophane paper, and he intended to deliver them to a person named "Danny" who lived in a

hotel at Union and Ingraham Streets; that he then went to appellant's home and, without appellant's knowledge, placed the bottle containing the 29 capsules of heroin in the clean-out pit of the fireplace; that on the next day (Feb. 14th) he called Danny and made an appointment to meet him at a service station ''across from'' the hotel; that he then talked to appellant by telephone and asked appellant to pick him up and take him to a hospital; that on the way to the hospital he told appellant that he wanted to go to a hotel to collect some money; that when they were on Union Avenue near Wilshire Boulevard he asked appellant to let him out of the automobile and to pick him up about five minutes later; and that he was arrested after he got out of the automobile.

Appellant asserts that he had no knowledge of the presence of the capsules in the clean-out pit of the fireplace. It is true that ''the law makes the matter of knowledge in relation to *defendant's awareness of the presence* of the object a basic element of the offense of possession.'' (*People* v. *Gory,* 28 Cal.2d 450, 454 [170 P.2d 433].) The evidence was sufficient, however, to justify a finding that appellant had such knowledge and that he had immediate and exclusive possession, dominion and control of the narcotics. Among other things, as above shown, 29 capsules of heroin were found in the clean-out pit of the fireplace of appellant's home, and 22 capsules of heroin were found in the possession of Hardeman soon after he had alighted from appellant's automobile. It is undisputed that those 22 capsules were taken from the bottle in which the 29 capsules were found in the clean-out pit. Also, an officer testified that appellant told him that the heroin which was in the clean-out pit belonged to appellant and that appellant had placed it there. The question as to the credibility of the witnesses and the weight to be given to their testimony was for the determination of the trier of facts.

Appellant also contends that the trial court did not give sufficient instructions on the subject of circumstantial evidence. He asserts that it was error to refuse to give instruction No. 26, requested by him, which was as follows:

''If the evidence in this case [as to any particular count] is susceptible of two constructions or interpretations, each of which appears to you to be reasonable, and one of which points to the guilt of the defendant, and the other to his innocence, it is your duty, under the law, to adopt that interpretation which will admit of the defendant's innocence, and reject that which points to his guilt.

"You will notice that this rule applies only when both of the two possible opposing conclusions appear to you to be reasonable. If, on the other hand, one of the possible conclusions should appear to you to be reasonable and the other to be unreasonable, it would be your duty to adhere to the reasonable deduction and to reject the unreasonable, bearing in mind, however, that even if the reasonable deduction points to defendant's guilt, the entire proof must carry the convincing force required by law to support a verdict of guilt."

The trial court refused to give said instruction on the ground that it was covered by instructions which were given. The court gave an instruction defining circumstantial evidence. It also gave instructions Nos. 27 and 28, requested by appellant, which were as follows:

"I instruct you further that you are not permitted, on circumstantial evidence alone, to find the defendant guilty of the crime charged against him unless the proved circumstances not only are consistent with the hypothesis that the defendant is guilty of the crime, but are irreconcilable with any other rational conclusion."

"When the case which has been made out by the People against a defendant rests entirely or chiefly on circumstantial evidence, and in any case before the jury may find a defendant guilty basing its finding solely on such evidence, each fact which is essential to complete a chain of circumstances that will establish the defendant's guilt must be proved beyond a reasonable doubt."

Appellant asserts that the two instructions, last above quoted, do not embody the principles of law set forth in the refused instruction No. 26. It appears that the jury was sufficiently instructed regarding circumstantial evidence. Appellant's further assertion that the court should have given, on its own motion, further instructions on circumstantial evidence is not sustained.

The purported appeal from the sentence is dismissed. The judgment is affirmed.

Shinn, P. J., and Vallée, J., concurred.