[Crim. No. 4905. Second Dist., Div. One. May 11, 1953.]

THE PEOPLE, Respondent, v. ARTHUR MARTINEZ, Appellant.

Morris Lavine for Appellant.

Edmund G. Brown, Attorney General, and William E. James, Deputy Attorney General, for Respondent.

WHITE, P. J.—In an information filed by the district attorney of Los Angeles County, defendants were accused of violating section 11500 of the Health and Safety Code, a felony. It was alleged that on or about May 25, 1951, defendants did willfully, unlawfully and feloniously have in their possession, "flowering tops and leaves of Indian Hemp (cannabis sativa)," in violation of the aforesaid code section.

Following the entry of not guilty pleas by defendants, the cause proceeded to trial before a jury, resulting in a verdict finding defendant Pat Louise Martinez not guilty, and her codefendant guilty as charged. A motion for a new trial was denied and judgment was pronounced against him. From the judgment of conviction and from the order denying his motion for a new trial, defendant Arthur Martinez prosecutes this appeal.

Epitomizing the evidence as reflected by the record herein it appears that about 8:30 p. m., on May 25, 1951, Deputy Sheriff C. J. McKinney, attached to the narcotic detail of the Los Angeles sheriff's office, accompanied by another deputy sheriff, saw the appellant at his residence in the city of Los Angeles. Appellant and another man, also named Martinez, were approaching the front porch of the former's house, a two-unit dwelling. The appellant was asked if he was Arthur Martinez, to which he replied, "Yes." He was asked where he lived and he indicated the front door of the aforesaid house. Appellant was informed by the officers that they desired to go into the house where he lived. Thereupon, appellant knocked on the door and it was opened by his wife, the codefendant, Pat Louise Martinez. To the latter the officers

identified themselves, whereupon she asked, "What's up?" or "What's wrong?"

The two officers walked towards the bedroom accompanied by appellant and his wife. At this time, they were joined in the house by six other officers. A search was made of the bedroom and a small cardboard box was found which had a collection of tiny green-like substance adhering to the structure of the box on the inside. This box was marked People's Exhibit No. 1 at the trial. A duly qualified chemist testified that the green leafy substance was fragments or parts of the plant cannabis sativa, commonly known as marijuana. There was also found a Zig Zag wheat straw brown cigarette paper and also white cigarette paper. These were placed inside of People's Exhibit No. 1.

The appellant and his wife were asked if they knew anything about the box and they denied any such knowledge. The officers took some keys from appellant's trouser pockets including a General Motors key. At this time appellant was asked if he drove a 1941 Buick Sedanette and he said, "I do not." He was asked if he had ever driven such a vehicle and he said, "No." He was then asked what vehicle the key fitted and he asserted that it fitted the ignition of an old '33 or '34 Plymouth automobile in his backyard.

Appellant was then taken to the garage in the rear of his residence, where the officers went to a Buick automobile and taking the key which they had abstracted from appellant's pocket, fitted it into the ignition of the Buick. Thereupon appellant was questioned concerning the fact that the key fitted the Buick automobile and he said that the vehicle belonged to his brother, Fortunato Martinez. He was asked where his brother was and stated that he did not know.

A search was made of the garage and from an opening in the loft, a brown metal suitcase was removed. This was People's Exhibit No. 2 at the trial. When it was brought down and opened it was found to contain approximately 14 brown paper bags. The deputy sheriff accompanying Officer McKinney started back to the cubbyhole in the loft, saying to appellant, "Is there any more there?" and at this time appellant said, "That is all there is."

A chemist examined the 14 bags contained in this brown metal suitcase and found that they contained crushed fragments of the plant cannabis sativa, commonly known as marihuana. These bags were examined in the presence of appellant and were found to contain a substance resembling

marihuana. When appellant was asked if there was any more there he said, ''That is all.''

A further search was made of the loft and a small metal toolbox was found there. This was marked People's Exhibit No. 3. This box had a lock hanging in the hasp. The box was brought down by the deputy sheriff in such a manner that the appellant could not see whether or not it was locked. When asked if he had a key for the lock appellant replied, ''It isn't locked.'' Inside this metal toolbox was found a scale (People's Exhibit No. 3a), some empty brown paper sacks folded flat (People's Exhibit No. 3b), together with a brown paper sack containing a quantity of the same green leafy substance which was contained in the paper bags in the suitcase (this was People's Exhibit No. 3c). The chemist testified that this green leafy substance also contained cannabis sativa, known as marijuana.

The appellant was then taken back to the house. There some keys were taken from the top of the dresser and were tried on the metal toolbox and one of them opened the lock thereon. The lock and keys were introduced as People's Exhibit No. 6. The appellant and his wife were told to accompany the officers to the office of the narcotic detail. Appellant then asked if he could take his shirt and he was allowed to go to a closet and obtain the same. At the office of the narcotic detail the shirt was taken from appellant, the pockets were turned wrong side out and a small collection of green leafy fragments was found in the shirt pockets. The shirt and these fragments were introduced at the trial as People's Exhibit No. 5. There was testimony by the chemist that the aforesaid green leafy fragments contained marihuana; that the contents of the shirt contained pocket debris along with green leafy fragments which were part of the plant cannabis sativa, commonly known as marihuana. When asked about the fragments found in his shirt, appellant stated he knew nothing about them.

For the defense, Fortunato Martinez testified that he was a brother of Arthur and owned the property on which the latter resided. That the aforesaid Buick automobile was his. That the garage in question was used by him to store different articles and that his other tenants on the property also had permission to use the garage as a storeroom and work shop. That other tenants did so use it for storage purposes and as a place to work on their automobiles. That the garage was never locked and could not be locked. That he had given his brother, the appellant, notice to vacate the premises and

had loaned him the Buick automobile with which to transport his belongings on the day following the latter's arrest.

Pat Louise Martinez, codefendant and wife of appellant, testified that she saw the small cardboard box (People's Exhibit No. 1), that her little daughter had brought it into the house on the day of the arrest and was playing with it. That she had taken it away from the child. Mrs. Martinez was asked if she saw People's Exhibits No. 2 and 3, the suitcase and toolbox, to which she replied that she had. She testified she had never seen the small bags until the preliminary examination, that she saw no cigarette papers on the dresser.

Testifying on his own behalf, appellant denied ownership of any narcotics. He stated that neither the suitcase or the marihuana in it belonged to him. That the cigarette papers in the dresser drawer did not belong to him. That the shirt which he put on just prior to leaving the house with the officers had just been returned from the cleaners on the day before his arrest. That he knew nothing of any marihuana found in the pockets of the shirt. That none of the boxes or contents taken from the attic in the garage belonged to him. That the cigarette papers found in the dresser drawer were kept there for use by his father on occasions when the latter visited at appellant's home. That he never used the aforesaid Buick automobile prior to his arrest. That he had an automobile of his own. That he never used marihuana and never knowingly had any in his possession.

As his first ground for a reversal, appellant urges that the information fails to state a public offense. In this regard he asserts that, "The only words in the English language contained in the information are the 'flowering tops and leaves of Indian Hemp.'" That while narcotics may be made from Indian hemp, the latter of itself is not a narcotic and may be used for making cloth, floor coverage and cordage. That the information does not charge the possession of a "narcotic" in violation of section 11500 of the Health and Safety Code.

However, the information did charge appellant with having in his possession flowering tops and leaves of Indian hemp (cannabis sativa) in violation of the code section just mentioned. And section 11001, subdivision "h" of the Health and Safety Code, includes within the definition of "narcotics" as therein used, the following:

"All parts of the plant Cannabis sativa L., (commonly known as marihuana), whether growing or not; the seeds

thereof; the resin extracted from any part of such plant; and every compound, manufacture, salt, derivative, mixture, or preparation of such plant, its seeds or resin; except as otherwise provided by law.''

Cannabis sativa is defined in section 11003 as follows:

'' 'Cannabis sativa,' as used in this division, means the male or female of any species commonly known as cannabis sativa, hemp, Indian hemp, or marihuana.''

It is therefore manifest that the information sufficiently advised appellant of the offense with which he was charged (Pen. Code, §§ 950, 952).

■ But, complains appellant, the information offends article IV, section 24 of the California Constitution, which provides in part that all judicial proceedings ''shall be conducted, preserved, and published in no other than the English language.'' This contention has been previously made and decided adversely to appellant. While the Latin botanical term ''cannabis sativa'' is employed in section 11001 of the Health and Safety Code, the term is therein referred to as ''commonly known as marihuana,'' and is expressly defined in section 11003 as meaning, ''hemp, Indian hemp, or marihuana.'' The contention that the information and the statutes upon which it is framed are not certain and definite and that the statutes are unconstitutional, is untenable (*People* v. *Oliver,* 66 Cal.App.2d 431, 434, 435 [152 P.2d 329]; *People* v. *Beesly,* 119 Cal.App. 82, 88, 89 [6 P.2d 114, 970]; *People* v. *Savage,* 64 Cal.App.2d 314, 315 [148 P.2d 654]).

■ Furthermore, appellant's contention that he was not fairly advised of the nature of the charge he was called upon to meet is also answered by the following stipulation entered into between his counsel and the district attorney immediately after the jury was sworn to try the cause.

''Mr. Stowe (Attorney for appellant): Before we start, your Honor please, may it not be well for us to stipulate, Mr. Galliano and myself, that the word 'marihuana' is included in the charge in this particular case. They speak here of Indian hemp and cannabis sativa.

''Mr. Galliano (Deputy District Attorney): I think it is understood that Indian hemp is marihuana.

''Mr. Stowe: Well, I understand, but the testimony will bring out, and the word that will be used will be 'marihuana'; so let us have it so there will be no technical question raised. We are willing to stipulate that the word 'marihuana' is synonymous with cannabis sativa and——

''The Court: And Indian hemp.

"Mr. Stowe: Another name for it.

"The Court: Is it so stipulated?

"Mr. Galliano: Yes, it will be so stipulated."

Appellant's next ground of appeal is that the evidence is insufficient to support the verdict, and that the latter is contrary to the law and the evidence. In this connection, appellant asserts that there is no evidence of a narcotic being in his possession, and likewise contends that there was no proof that Indian hemp is a narcotic forbidden by section 11500 of the Health and Safety Code. This latter contention is disposed of by reference to section 11003 of the aforesaid code defining the term "cannabis sativa." The chemist testified as heretofore noted, that he examined the 14 bags contained in the brown metal suitcase and stated that they contained crushed fragments of the plant cannabis sativa, also known as marihuana. That a small collection of green leafy fragments taken from the pockets of appellant's shirt contained marihuana. Furthermore, the stipulation entered into between appellant's counsel and the district attorney, and heretofore adverted to, militates strongly against appellant's contention that the evidence did not disclose that Indian hemp is a narcotic.

 Appellant's claim that the narcotic was found in an open garage on property rented by him and that, therefore, was not in his exclusive possession, is answered by the fact that the law does not require proof that the accused had the prohibited article on his person (*People* v. *Sinclair*, 129 Cal.App. 320, 322 [19 P.2d 23]). The essence of the offense is, "knowledge of the presence of the object as embraced within the concept of 'physical control with the intent to exercise such control,' which constitutes the 'possession' denounced by the statute" (*People* v. *Gory*, 28 Cal.2d 450, 455, 456 [170 P.2d 433]).

 When consideration is given to the uncontradicted testimony that narcotics were found in the pockets of appellant's shirt and the circumstance of the occupancy by appellant of the premises upon which other narcotics were found, together with his admissions, equivocal statements and actions at the time of his arrest, and subsequent thereto, we are persuaded that the evidence was sufficient to warrant the jury in finding that appellant was aware of the presence of the contraband on his premises and in the pockets of his shirt, and was in that possession of the narcotics which is denounced by law. *People* v. *Gory, supra*, strongly relied

upon by appellant, does not aid him. In that case, the Supreme Court stated at page 452, "A review of the record convinces us that the evidence was sufficient," but concluded that the failure of the court to instruct the jury "fully and clearly" resulted in such prejudice as to require a reversal.

■ Appellant's claim that it was incumbent upon the prosecution to negative the exception in the statute, namely, that the accused did not have the written prescription of a physician, dentist, chiropodist, or veterinarian, licensed to practice in the state of California is without merit. As far back as the case of *People* v. *Boo Doo Hong* (1898), 122 Cal. 606 [55 P. 402], it has been the law that when a license or prescription would be a complete defense, the burden is upon the accused to prove that fact so clearly within his knowledge. (See, also, *People* v. *Moronati*, 70 Cal.App. 17, 21, 22 [232 P. 991]; *People* v. *Bill*, 140 Cal.App. 389, 392, 393 [35 P.2d 645]; *In re Lord*, 199 Cal. 773, 776 [250 P. 714].)

Equally without merit is appellant's argument that the court erred in failing to define a narcotic in the English language. This claim is disposed of by what we have heretofore said in answer to appellant's claim that the information herein contravenes article IV, section 24, of our state Constitution. ■ Appellant's contention that the challenged instruction contained an element not charged in the information, to wit: marihuana, is unavailing in view of the stipulation heretofore set forth and entered into by him at the outset of the trial. An examination of the record discloses that the court fully, fairly and correctly instructed the jury on all the issues raised by the information or presented by the pleadings.

■ The final contention of appellant, that he was charged with an offense "not made out by the information," and accordingly was denied "due process of law guaranteed by the Fourteenth Amendment to the Constitution of the United States," is also untenable. The information clearly charged a violation of section 11500 of the Health and Safety Code, in that appellant had in his possession at the time specified, flowering tops and leaves of Indian hemp (cannabis sativa).

For the foregoing reasons the judgment and the order denying defendant's motion for a new trial are, and each is affirmed.

Doran, J., concurred.

Appellant's petition for a hearing by the Supreme Court was denied June 4, 1953.